MARION PETERSON, JR., Plaintiff-Appellant, *v.* B/W CONTROLS, INC., Defendant-Appellee.

Third District   No. 76-552

Opinion filed August 2, 1977.

Nile J. Williamson, of Lindholm & Williamson, of Peoria, for appellant.

Robert H. Jennetten, of McConnell, Kennedy, Quinn & Johnston, of Peoria, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from a summary judgment entered in the Circuit Court of Peoria County, Illinois.

Plaintiff, Marion Peterson, Jr., was a certified electrician employed by the Midland Coal Company to do general electrical work. He was also a Federal mine specialist. He worked on controls and moved cables, the work normally done by a Federal mine specialist. Peterson had approximately 17 years of experience as an electrician. On August 11, 1973, Peterson went to a building known as the "east pump house" to shut off a circuit breaker in a panel which he had not previously inspected and with which he was unfamiliar. The circuit breaker controlled pumps located in the east pump house. The control panel box was approximately three feet square and eight to 10 inches deep. The door was in two parts, hinged on both sides and opened from the middle. There was no warning on the doors.

The control circuit wires were connected on one end to a relay switch which was lying in the right corner of the bottom of the control panel box. The relay switch did not fall out of the box. Plaintiff did not pay much attention to the relay switch. He was not looking for and did not see a triangular-shaped piece of metal on the relay switch with words written on it.

Control circuit wires connect a relay switch to something else. The control circuit wires which fell out of the control panel box extended

across in front of the plaintiff to his left and behind the other door which remained closed. Plaintiff did not know whether the control circuit was leading to a pump or elsewhere.

Plaintiff opened the right hand door of the panel and insulated wires which were attached to a relay switch fell out. When the plaintiff saw the wires protruding from the box he reached down and attempted to push them back into the control panel box with his left hand. He did not touch the relay switch and he did not touch the control circuit wires within a foot of the relay switch. Plaintiff touched the wires with his exposed left index, middle, ring and little fingers. Plaintiff had hot gloves with him and had planned to wear them when shutting off the circuit breaker. He was standing on a rubber mat. He said that he was not touching the metal control panel box at the time of the incident and he did not know that he was grounded. The hot wires "paralyzed" him.

If the plaintiff had pulled the circuit breaker prior to pushing on the wires, the power to the relay switch would have been shut off. The plaintiff did not know of any defect in the switch itself.

The Type DH relay switch bearing serial number 626476 was manufactured and sold by B/W Controls, Inc., in 1970. At the time the relay switch was sold and placed into the stream of commerce by the manufacturer there were no external control circuit wires attached to the relay switch.

Peterson filed suit on August 18, 1975, against B/W Controls, Inc., B/W Controls International, Ltd., and The Anaconda Company. Anaconda, the alleged manufacturer of the insulated wire, was dismissed as a party by stipulation. Plaintiff conceded that B/W Controls International, Ltd., the alleged manufacturer of the relay switch, did not manufacture the relay switch. Summary judgment was entered on behalf of B/W Controls International, Ltd., on October 14, 1976. There is no appeal of those rulings.

Plaintiff's complaint alleged that B/W Controls, Inc., manufactured the relay switch; that the relay switch fell out of the control box; that plaintiff, in attempting to push the relay switch back into the box, touched a component wire of the switch; that the switch was not reasonably safe for its intended use because of various defects such as inadequate mounting, instructions, warnings, and insufficient insulation; and, that there was proximate causation between the condition of the product and plaintiff's resulting amputation of four fingers of his hand.

Defendant, B/W Controls, Inc., denied all the material allegations of plaintiff's complaint, including the manufacture of the relay switch. Defendant filed a motion for summary judgment and attached the transcript of plaintiff's deposition and an affidavit of defendant's president which stated that the relay switch as manufactured by B/W Controls,

Inc., did not have attached thereto any external electrical control circuit wires leading away from the terminals on the switch at the time said relay switch left the control of B/W Controls, Inc., and therefore there could be no causal connection between an alleged defect in the switch and the injury to plaintiff for which defendant could be held liable.

Plaintiff's counteraffidavit stated that external wires existed on the switch at the time of the accident. There was no explanation of how the wires became attached to the relay switch. Plaintiff's deposition stated that some switches were prewired by the manufacturer and some were not.

On October 29, 1976, the trial court entered the summary judgment order which is the subject of this appeal.

The plaintiff raises two questions on appeal: (1) does a complaint, which otherwise alleges a cause of action in strict liability, fail because the allegedly defective condition of the product is not the contact point of plaintiff's injury, and (2) did the trial court err in allowing defendant's motion for summary judgment.

■■ Illinois law of strict liability requires that the plaintiff allege and prove that his injuries were proximately caused by a condition or defect in the product; that the product was unreasonably dangerous; and, that the condition or defect existed when the product left the manufacturer's control. (*Neal v. Whirl Air Flow Corp.* (1976), 43 Ill. App. 3d 266, 356 N.E.2d 1173; *Hepler v. Ford Motor Co.* (1975), 27 Ill. App. 3d 508, 327 N.E.2d 101; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.) Proving that an injury was caused by a dangerous condition of the product is not sufficient for recovery; the injury must be caused by an unreasonably dangerous condition of the product. (*Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232.) The manufacturer has a duty to warn the user of any unusual danger involved in the use of the product. (*Wallinger v. Martin Stamping & Stove Co.* (1968), 93 Ill. App. 2d 437, 236 N.E.2d 755; *Jonescue v. Jewel Home Shopping Service* (1973), 16 Ill. App. 3d 339, 306 N.E.2d 312; *Frisch v. International Harvester Co.* (1975), 33 Ill. App. 3d 507, 338 N.E.2d 90.) The warning must adequately inform the user of any unusually dangerous propensity about which the manufacturer knows or should have known. The manufacturer is held to the degree of knowledge and skill of experts. The duty to warn will be imposed where there is unequal knowledge, actual or constructive, and where the manufacturer, possessed of such knowledge, knows or should know that harm might or could occur if no warning is given. (*Frisch v. International Harvester Co.* (1975), 33 Ill. App. 3d 507, 338 N.E.2d 90; *Baylie v. Swift & Co.* (1975), 27 Ill. App. 3d 1031, 327 N.E.2d 438.) However, there is no duty to warn when the manufacturer and the user have equal knowledge of the danger. *Weiss v.*

*Rockwell Manufacturing Co.* (1973), 9 Ill. App. 3d 906, 293 N.E.2d 375.

Here the plaintiff complains that the defects are: no adequate instructions detailing how to assemble the relay switch and its component parts or how to assemble replacement parts or wires for the relay switch; no adequate warning to indicate that only properly insulated and covered wires and parts should be used upon the relay switch; no adequate instructions to indicate how the relay switch should be mounted or incorporated in electrical circuitry; and, no adequate warning on the face of the relay switch to indicate its dangerous properties or tendencies.

Plaintiff argues that such allegations adequately state the defects in the product and as such the pleading conforms to the *Frisch* and *Neal* requirements. Plaintiff further argues that if the requirements are met, the matter should go to trial. We are not convinced that this is entirely true. We believe that even if the above allegations are pled, it does not follow that the allegations themselves create a cause of action. There is nothing in the pleadings to show that the switch required special wiring. There is no allegation that this switch is different than any other switch which the plaintiff has used in his work and therefore that this switch is more dangerous than any other switch which the plaintiff has used.

It appears that the plaintiff has had several years of experience in the field of electrical work and that he had some academic schooling, even though in a correspondence school. Further, it appears that plaintiff was acquainted with the manner in which a switch is connected to wiring. In his deposition he described how a switch is connected to wiring.

Plaintiff did not allege that he was injured because the switch was improperly wired due to a lack of instruction from defendant; he merely alleged that there were no instructions given. While plaintiff did allege that the Anaconda Densheath 900, Type TW 600V machine tool wire, "did not contain an exterior rubber of sufficient thickness and density to insulate from exposure the internal metal wire when said internal metal wire was carrying 600 volts of electricity" although the "wire was designed and represented on its face to insulate up to 600 volts of electricity carried by its internal metal wire, which representation on its face was larger than said wire was actually capable of insulating * * *," and that the wire was a component part of the switch, he alleges no facts which show how or when or by whom the wire was attached to the relay switch. There is only the allegation that the wire was a component part of the relay switch and the "* * * wire and relay switch were in the same condition at the time of the accident as when they left the manufacturer's possession and control * * *." Since the defendant, B/W Controls, Inc., was the only defendant at the time the summary judgment complained of was entered, we must assume the plaintiff is alleging that the wire was attached by B/W Controls, Inc.

■■ The plaintiff assumes that summary judgment was entered because the court felt that the plaintiff could not prove proximate cause. Plaintiff concedes that he must prove that a defect in the product proximately caused his injuries. He also is willing to concede, arguendo, that the wire was not a component part of the switch. He argues that the wire is merely a conduit of electricity. The defective condition (lack of proper instruction and warning) of the relay switch, "* * * created the flow of electricity and the wire, itself defective or not, is merely a carrier of the electricity created by defendant's defect." This, then, shows the causal relationship between the defect and the injury. We find no merit in this argument. It appears that plaintiff is arguing that an instruction regarding the type of wire to be used with the relay switch would meet the alleged duty of the manufacturer to warn the user of the danger of electrical shock. Yet we read plaintiff's allegation that the wire used was designed and represented by Anaconda to be sufficiently insulated to carry 600 volts of electricity when it was not so insulated. If the warning and instruction were that only wires sufficiently insulated to carry 600 volts of electricity were to be connected to the relay switch and plaintiff or another electrician at the Midland Coal Company had attached the Anaconda wire which was represented to be sufficiently insulated to carry 600 volts of electricity, the injury would still have occurred because the wire was not sufficiently insulated. Therefore, we view the insufficient insulation of the Anaconda wire and not the failure of the defendant to give instructions or warning as the proximate cause of plaintiff's injuries.

■■ Whether there is a duty to warn is a question of law and not a question of fact. (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465.) The court, in determining whether there is a duty to warn, must consider whether the injuries were foreseeable. It must consider whether it is reasonable to expect that such an injury would occur, not whether it is remotely possible that such an injury would occur. *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465.

In support of his argument that a duty to warn exists, plaintiff urges us to consider *Troszynski v. Commonwealth Edison Co.* (1976), 42 Ill. App. 3d 925, 356 N.E.2d 926. The plaintiff in that case had a European high school education. He had an unsophisticated knowledge of electricity. His injury occurred when he stuck his hand through the broken window of the electric meterbox located in his back yard. He had been attempting to remove the glass from the broken window. The meterbox had no printed warning regarding the danger of electrical shock. The box was not insulated to prevent shock even though such insulation was inexpensive. The court there found that a person of Troszynski's intelligence and experience might have expected a meterbox located in

his back yard and in the back yards of a plethora òf other persons would be properly insulated and designed to prevent electric shock. The court found that such an expectation was reasonable.

In the instant case the plaintiff is an experienced electrician who is well aware of the danger of electricity. He stated in his deposition that he had had a hot glove with him which he planned to use in shutting off the circuit breaker. He planned to use the glove as a safety precaution. We do not intend to comment on this matter further than to state that we believe the trial court in the instant case was justified in finding that the injuries to plaintiff were not reasonably foreseeable by the manufacturer.

It remains for us to determine whether the Anaconda wire was a component part of the relay switch. Defendant's president, Robert Bender, submitted an affidavit stating that B/W Controls, Inc., manufactured the Type DH relay switch bearing serial number 626476 which is involved here. At the same time the relay switch was sold in 1970 and placed in the stream of commerce, there were no external electrical wires extending away from the screw-type terminals of the switch. The switch did have terminals for the purpose of allowing external electrical control circuit wires to be attached when the relay switch was installed, but those wires were not part of the relay switch at the time it was sold. Plaintiff in his counter-affidavit stated that on March 22, 1976, he examined a B/W Controls, Inc., Type DH relay switch bearing serial number 626476. The switch then contained two exterior electrical wires from screw-type terminals. The wires lead from terminals three and five to what appeared to be a coil connected to the relay switch. The switch appeared to be in the same condition on March 22, 1973, the date of his injury.

Plaintiff argues that the Bender affidavit fails to describe the absence of external wires from any aspect of the switch other than wires extending from the terminals to the coils of the same switch. He believes that this creates a dispute of material fact and therefore, summary judgment is improper.

Summary judgment should be granted only where there is no genuine issue as to any material fact and the moving party is entitled to the judgment as a matter of law. (*Blaylock v. Toledo, Peoria & Western R.R. Co.* (1976), 43 Ill. App. 3d 35, 356 N.E.2d 639.) The court must consider the pleadings, the exhibits and the affidavits and construe them strictly against the moving party and liberally in favor of the opponent. The right of the moving party must be free of doubt. *Lundin v. Egyptian Construction Co.* (1975), 29 Ill. App. 3d 1060, 331 N.E.2d 208.

Plaintiff refers to the contradiction between the answer of the defendant and the affidavit filed by the defendant. The answer denied manufacture of the relay switch, but the interrogatories and the affidavit

of defendant's president admitted the manufacture. It appears that plaintiff is arguing that since the defendant's president did not deny that any wires were attached to the relay switch, he admitted that wires other than those extending from the terminals (namely, those extending from the terminals to the coils of the same switch) were connected by the defendant.

■■ We do not agree. As we have stated before, we believe that the plaintiff's injury was caused by a defect in the Anaconda wire. Plaintiff alleged that there was a defect in the Anaconda wire and he also alleged that that wire was a component part of the relay switch. Defendant's president denied that. In his counteraffidavit plaintiff did not allege facts contradicting defendant's denial. He merely alleged that the wires were attached at the time of his injury. Plaintiff at one time conceded, arguendo, that whether the defendant attached the wire was immaterial because the basis of his action is the failure of the defendant to give warning or instruction. Therefore, whether the wire was connected by the defendant or by an electrician at the Midland Coal Company is immaterial.

We believe that the trial court could construe the evidence most favorably for the plaintiff and find that he did not present a justiciable issue to the court.

For the reasons stated above, the judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

STENGEL, P. J., and STOUDER, J., concur.