RICHARD D. PUCKETT, Plaintiff-Appellant, v. EMPIRE STOVE COMPANY, Defendant-Appellee and Counterdefendant (Honore Ghibaudy *et al.*, Defendants and Counterplaintiffs and Third–Party Plaintiffs-Appellants; International Telephone and Telegraph Company, Third–Party Defendant-Appellee; Getty Oil Company, Third-Party Defendant).

Fifth District No. 5—87—0372

Opinion filed May 19, 1989.

HARRISON, J., specially concurring.

Thomas E. Jones, Anthony L. Martin, and John E. Sabo, all of Walker & Williams, P.C., of Belleville, for appellant.

Churchill & McDonnell, of Belleville (Allen D. Churchill and Daniel G. Donahue, of counsel), for appellee International Telephone & Telegraph Company.

Cornelius Thomas Ducey, Jr., of Ducey, Feder & Ducey, Ltd., of Belleville, for appellee Empire Stove Company.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

Plaintiff, Richard D. Puckett, brought an action in the circuit court

of St. Clair County to recover for personal injuries incurred in a fire which broke out in the house he was renting from defendants, Honore Ghibaudy and Florence Ghibaudy (hereinafter Ghibaudys). Plaintiff alleged that the fire was caused by the defective condition of a floor furnace manufactured by defendant Empire Stove Company and installed by defendant Honore Ghibaudy.

Count I of plaintiff's complaint was directed to Empire Stove Company (hereinafter referred to as Empire) and alleged, in pertinent part, that at the time the floor furnace left the control of Empire it was in a defective and unreasonably dangerous condition in that the gas valve component contained a "jumper" which short-circuited and rendered inoperable the high temperature limit control switches, and further that, despite the fact that Empire knew or should have known that "jumpers" may be found on the valve supplied with the furnace or on replacement valves, the furnace failed to have affixed to it adequate warnings to the effect that "jumpers" should not be used on the gas valve of the furnace. Count II of plaintiff's complaint was directed to the Ghibaudys and alleged that they had negligently installed the floor furnace with a "jumper" attached to the gas valve component which short circuited and rendered inoperable the high temperature limit control switches on the furnace.

Ghibaudys filed a third-party complaint for contribution against the manufacturer of the gas valve, International Telephone and Telegraph Company (hereinafter referred to as ITT), alleging that at the time the gas valve left the control of ITT, it was defective and unreasonably dangerous in that it was wired so as to circumvent a high temperature limit control switch and that it provided no warning of the danger involved. Plaintiff did not sue ITT.

The furnace in question was situated in the crawl space of the home and radiated heat upward through a grate-covered hole cut in the floor. The furnace was designed for such use. The furnace contained a safety device called a limit switch which was designed to shut the furnace off in the event the grate was covered and heat built up in the furnace to a dangerous level. The furnace utilized gas and had a valve which controlled the flow of gas into the burner assembly of the furnace. This valve contained four electric terminals to control operation of the valve. Terminals one and two were connected to the generator, which supplied electricity for operation of the valve and thermostat. Terminals three and four were connected to the thermostat, which was placed on a wall in the house. Terminal three was a dead terminal in that it had nothing connected to it from the inside of the valve. It received its electrical power from terminal two. The wires

from the limit switch were connected to terminal two. The electric terminals worked in a series, so that if electricity was interrupted at any point, the terminals thereafter would receive no electricity.

When the thermostat in the house demanded more heat, it closed the circuit to terminal four, which caused the gas valve to open, allowing gas into the burner assembly. If the temperature inside the furnace reached a certain level, the limit switch would open, stopping the electric current from flowing from terminal two to terminals three and four, thereby closing the gas valve and shutting off the furnace. However, a problem arises when a metal "jumper" clip is installed between terminals two and three. This allows electricity to flow between these two terminals, circumventing the limit switch and allowing the gas valve to remain open, supplying gas to the burner and overriding the command of the limit switch to turn the gas valve off.

The furnace was designed for, and manufactured with, a gas valve manufactured by ITT and designated a B67RB88 valve. This valve was manufactured by ITT specifically for Empire. The B67RB88 valve is a right-angle or 90° valve, rather than a straight through or 180° valve. Its inlet is one-half inch in diameter, and its outlet is three-eighths inch in diameter. The furnace was designed and manufactured to accommodate this size valve. The electric terminals are raised and at 90° to the valve axis. This valve was manufactured by ITT and sold to Empire without a jumper attached to its terminals or included therewith.

The gas valve found on the furnace after the fire had also been manufactured by ITT, but was designated a B67RA28 valve. These valves were manufactured especially for and sold exclusively to two companies, neither of which was Empire. The B67RA28 valve is a straight through or 180° valve with a one-half inch inlet and a one-half inch outlet. The B67RA28 valve provides for the pilot downstream, whereas the B67RB88 valve provides that the pilot be located on the upstream or inlet side of the valve. The electric terminals on the B67RA28 were flat and along the valve axis, rather than raised and at 90° to the valve axis, as in the B67RB88 valve. The B67RA28 valve is normally sold with a jumper attached to it. The valve could not be attached to the furnace in question without a bushing, and the valve found on the furnace after the fire had a bushing on the outlet to decrease its diameter from one-half inch to three-eights inch. There was also a flared elbow attached to the valve found on the furnace after the fire to make it a right-angle valve.

At the time the furnace was manufactured, Empire did not carry the bushing, elbow or flaring tool to construct or attach the valve found on the furnace. Further, a straight through valve could not have

been placed on the furnace by Empire when the furnace was assembled because it could not have gone through the testing stage of the assembly process. Finally, Empire never ordered or received a straight through valve from ITT.

When sold, the furnace had affixed to it just above the gas valve a wiring diagram showing how to connect wires to the terminals on the valve. The wiring diagram does not show a jumper clip, but does not warn that a jumper clip should not be used. The diagram does, however, state, "must be wired as shown above." The furnace was sold with an installer's manual, which states, "Check combination valve terminals for shorts, or a jumper between the two inside terminals—jumper should not be there when temperature limit controls are used." This statement is contained in a section of the manual which discusses remedying problems with the furnace. ITT supplies an instruction sheet with its gas valves which states, "Auxiliary controls (if used remove jumper)."

The furnace had been installed in plaintiff's home by defendant Honore Ghibaudy in the summer of 1977. The furnace had been originally manufactured in June 1974 and had been first sold to James Kraft in September 1974. The Krafts used the furnace in their home without problem until April or May 1977. Ghibaudy received the furnace from the Krafts and placed it in his rental house. He did not alter, repair or change the valve which was on the furnace, and the furnace had worked satisfactorily up to the date of the fire.

On the night of the fire, October 6, 1979, plaintiff placed two large cardboard boxes on top of the furnace grate to keep his dogs from entering the living room of the house. Plaintiff did not think the pilot light to the furnace was lit and did not think the furnace would come on. Later that night, plaintiff woke up to discover a fire in the area of the cardboard boxes. Plaintiff broke a window to escape, which allowed oxygen into the room and caused flames to leap to the open window where plaintiff was standing. Plaintiff was severely burned.

The case was tried to a jury in September and October 1986. At the close of all the evidence, Empire moved to strike certain allegations of plaintiff's complaint, including the allegation that the furnace was defective and unreasonably dangerous for failure to warn that a jumper should not be used on the gas valve. The court found as a matter of law that Empire had no duty to warn and struck that allegation of plaintiff's complaint. Plaintiff's first argument on appeal is that the trial court erred in so doing.

■ It is well settled that a failure to warn of a product's dangerous propensities may serve as the basis for holding the manufacturer

or seller strictly liable in tort. (*Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 29, 402 N.E.2d 194, 196.) The duty to warn, however, arises only where the manufacturer or seller knows or should know of the danger and where unequal knowledge exists on the part of the consumer/user. (*Illinois State Trust Co. v. Walker Manufacturing Co.* (1979), 73 Ill. App. 3d 585, 589, 392 N.E.2d 70, 73.) In order to find that the manufacturer should have known of the danger inherent in the product, it must be objectively reasonable to expect the user of the product to be injured in the manner in which the plaintiff was injured. (*Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 158, 507 N.E.2d 1213, 1228.) It is not enough that the injury was merely conceivable. (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 466, 343 N.E.2d 465, 471.) Whether the plaintiff's injury was foreseeable by the manufacturer, and whether a duty to warn existed, are questions of law for the court to resolve, rather than questions of fact. (*Genaust*, 62 Ill. 2d at 466, 343 N.E.2d at 471.) Further, there is no duty to warn where the manufacturer and the user have equal knowledge of the danger (*Peterson v. B/W Controls, Inc.* (1977), 50 Ill. App. 3d 1026, 1029, 366 N.E.2d 144, 147), or where the danger is readily apparent. *Curry v. Louis Allis Co.* (1981), 100 Ill. App. 3d 910, 916, 427 N.E.2d 254, 258.

■ Plaintiff argues that Empire had a duty to warn users of the furnace of the danger presented by the presence of a jumper on the gas valve because it had actual knowledge of the danger. Empire counters that there was no duty to warn because, although it knew of the danger presented by the presence of a jumper on the gas valve, it was not objectively reasonable to expect that the B67RB88 gas valve originally installed on the furnace by Empire would be replaced by a B67RA28 gas valve containing a jumper, and it therefore was not foreseeable that the user of the furnace would be injured in the manner in which plaintiff was injured. Empire also argues that, because there was no evidence as to who installed the B67RA28 gas valve on the furnace, there was no evidence as to whether that installer had unequal knowledge of the danger relative to Empire.

We find Empire's argument persuasive and affirm the trial court's order striking that paragraph of plaintiff's complaint alleging strict liability for Empire's failure to warn. The question is not whether Empire knew or should have known that a jumper on the gas valve would circumvent the high temperature limit control switches, but whether Empire knew or should have known that someone would replace its original gas valve with a different gas valve containing a jumper. We do not think it was objectively reasonably foreseeable by Empire that

someone would remove the B67RB88 gas valve from the furnace and replace it with a B67RA28 gas valve with a jumper attached. The furnace was specifically designed to have a right-angle gas valve. In order to replace that valve with a B67RA28 valve, it was necessary to modify the design of the furnace and attach a bushing to accommodate the different size outlet of the B67RA28 valve. There was no evidence that this had ever occurred before or that Empire could have reasonably anticipated that it would occur. The B67RB88 valve and the B67RA28 valve clearly are not interchangeable. The B67RA28 valve was neither designed nor intended to be a replacement valve for the B67RB88 valve. The floor furnace was not designed to receive the B67RA28 valve, nor was the B67RA28 valve designed to be installed on this particular floor furnace. In fact, the B67RB88 valve and the B67RA28 valve are not even similar. Certainly they are not so similar that Empire should have known that the B67RB88 valve without a jumper would be replaced with the B67RA28 valve with a jumper. The trial court properly found, as a matter of law, that Empire had no duty to warn of the danger presented by a jumper on the gas valve.

■■ The second argument raised by plaintiff is that the trial court erred in finding as a matter of law that a warning of the danger inherent in having a jumper on the gas valve was present on the furnace. During argument on Empire's motion to strike the allegation of plaintiff's complaint having to do with a duty to warn, the trial court stated,

> "I would state this maybe for the record. I think that there is a warning in the diagram or in the schematic and the issue is does that adequately communicate is basically what it is [sic]. Does that communicate to the users of the product[?] And that would be a question, you know."

Later in the proceedings, the trial court ruled as a matter of law that Empire had no duty to warn of the danger of placing a jumper on the gas valve.

Plaintiff argues that the above statement indicates that the trial court found, as a matter of law, that a warning was present and that this question was one more appropriately left to the jury. However, whether a warning was present and whether it was adequate were not properly questions for the jury in this case, where the trial court properly had determined as a matter of law that Empire had no duty to warn.

■■ The next argument raised by plaintiff is that the trial court erred in striking from plaintiff's complaint the allegation that the furnace was defective and unreasonably dangerous because it contained a

nontransparent cover over the pilot light which prevented users from knowing whether the furnace was operational. The furnace had a pilot light which was covered with a clear lens, permitting the user to see if the pilot light was lit. However, the clear lens was covered with a movable solid metal lens to protect the clear lens and to prevent the glow from the pilot light from being seen. The solid lens could be moved to allow viewing of the pilot light. Plaintiff argues that the pilot light cover prevented him from knowing the location of the pilot light and whether it was lit, and argues that "there is a strong probability that the fire would not have occurred had the plaintiff been able to see that the pilot light was lit." Plaintiff implies in his argument that he would not have placed the cardboard boxes on the grate had he known the pilot light was lit and the furnace might come on.

Plaintiff presented no evidence in support of the allegation that the furnace was defective and unreasonably dangerous because it contained a nontransparent cover over the pilot light. In order to succeed on a theory of strict liability, a plaintiff must prove that the injury resulted from a condition of the product and that the condition was an unreasonably dangerous one. (*Walker v. Maxwell City, Inc.* (1983), 117 Ill. App. 3d 571, 575, 453 N.E.2d 917, 921.) No witness, expert or otherwise, testified that the pilot light cover made the furnace unreasonably dangerous or that the pilot light cover contributed in any way to the fire.

Plaintiff's argument that he probably would not have placed the boxes on the grate had he known the pilot light was lit is not sufficient to demonstrate that the furnace was defective and unreasonably dangerous. A product is unreasonably dangerous only when it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. (*Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211, 216, 412 N.E.2d 959, 962.) Plaintiff presented insufficient evidence that the movable pilot light cover made the furnace defective and unreasonably dangerous, or that it contributed in any way to his injuries. The trial court properly struck this allegation of plaintiff's complaint.

■ Plaintiff also argues that the trial court erred in striking from his complaint allegations that there was a jumper on the gas valve of the furnace which had prevented the high temperature limit switch from performing its safety function when the temperature of the furnace became unreasonably high. Plaintiff argues that the jury could have inferred from the evidence that Empire had installed the B67RA28 gas valve which was attached to the furnace after the fire

and which contained the jumper, and that this valve caused plaintiff's injuries. We fail to understand plaintiff's argument in this regard. This is precisely the allegation of plaintiff's complaint upon which the case was submitted to the jury. The jury was instructed as follows:

"As to the Plaintiff's claim against Empire Stove Company, the Plaintiff claims that he was injured as a result of Empire Stove floor furnace that there existed in the floor furnace at the time it left the control of the Defendant a condition which made the floor furnace unreasonably dangerous in that the gas valve component contained a jumper which short-circuited and rendered inoperable the high limit control switches.

The Plaintiff further claims that the foregoing was a proximate cause of his injury.

The Defendant denies the claimed condition existed in the floor furnace at the time the floor furnace left its control. Defendant denies that the Plaintiff sustained damages to the extent claimed."

The jury found for the defendant, Empire, thereby finding that at the time the furnace left Empire's control, the gas valve did not contain a jumper.

The trial court did, however, strike several other allegations of plaintiff's complaint: that the furnace failed to have an operational high temperature limit switch; that the presence of the jumper on the gas valve effectively eliminated the high temperature limit switch, which was required by law; and that the furnace was wired in such a manner that it prevented the high temperature limit switch from functioning. The first of these allegations was not supported by the evidence, which clearly showed that the high temperature limit switch did operate properly in the absence of a jumper on the gas valve. The other allegations are substantially the same as the allegation upon which the case was submitted to the jury. The trial court did not err in striking these allegations from plaintiff's complaint.

The next argument raised by plaintiff is that the trial court erred in directing a verdict in favor of the third-party defendant, ITT, and against the third-party plaintiffs, Honore and Florence Ghibaudy. Plaintiff brings this appeal pursuant to an agreement entered into with the Ghibaudys at the conclusion of the trial which assigned to plaintiff the Ghibaudys' cause of action for contribution against ITT.

Plaintiff argues that the trial court erred in directing a verdict in favor of ITT because the jury could have inferred from all the evidence that ITT placed the jumper on the B67RA28 gas valve which was found on the furnace after the fire, that ITT knew its B67RA28 gas

valves were being installed on floor furnaces, that ITT knew of the danger of installing a gas valve with a jumper on a furnace which contained high temperature limit controls, that ITT had a duty to warn of the danger and that the warning it gave in its instruction manual was inadequate. Plaintiff argues that the question of the adequacy of the warning should have been left to the jury. Plaintiff further argues that ITT had a duty to place a warning directly on the gas valve and also to ship the valve with the jumper included but not attached.

ITT responds that plaintiff is not a proper party to prosecute this appeal because plaintiff never brought suit against ITT directly, the statute of limitations for bringing such an action has expired, and the assignment to plaintiff of the Ghibaudys' cause of action for contribution against ITT is void as against public policy. ITT also argues that the Ghibaudys had no right of contribution to assign to plaintiff and that plaintiff received nothing by the assignment. Finally, ITT argues that it had no duty to warn of the danger of using a jumper on a furnace with a high temperature limit switch because it was not foreseeable that its B67RA28 gas valve would be installed on the Empire floor furnace involved in this case and because the installer of the valve and/or furnace had knowledge of the danger equal to that of ITT.

ITT argues that the assignment of Ghibaudys' right of action for contribution against ITT is void as against public policy because it encourages litigation which otherwise would not be brought. To allow the assignment in this case, ITT argues, would constitute approval of what was known at common law as champerty or maintenance. We disagree.

Black's Law Dictionary defines "champerty" as "[a] bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the litigation at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject sought to be recovered." (Black's Law Dictionary 169 (abridged 5th ed. 1983).) "Maintenance" is defined as "maintaining, supporting, or promoting the litigation of another." (Black's Law Dictionary 169 (abridged 5th ed. 1983).) Champerty and maintenance have been disapproved by the courts as against public policy because a litigious person could harass and annoy others if allowed to purchase claims for pain and suffering and pursue the claims in court as an assignee. (*Town & Country Bank v. Country Mutual Insurance Co.* (1984), 121 Ill. App. 3d 216, 218, 459 N.E.2d 639, 640.) However, plaintiff in the instant case is no stranger to the action between third-party plaintiffs Ghibaudys and third-party defendant ITT. Nor is plaintiff promoting the litigation of another which otherwise might not be maintained. Instead, plaintiff has a direct and immediate interest in Ghibaudys' right

of action for contribution against ITT. Allowing Ghibaudys to assign that cause of action to plaintiff is not violative of any public policy of which we are aware.

That plaintiff chose not to bring suit directly against ITT, and may now be barred by the statute of limitations from doing so, does not affect our decision in this regard. The intent of the contribution statute was to reach anyone who is culpable, regardless of whether they have been immunized from a direct tort action by some special defense or privilege. (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1984), 129 Ill. App. 3d 1011, 1024, 473 N.E.2d 421, 431, *aff'd* (1986), 112 Ill. 2d 378, 493 N.E.2d 1022.) Thus, plaintiff's inability to maintain a direct tort action against ITT does not protect ITT from Ghibaudys' third-party contribution action. Plaintiff still has a direct and immediate interest in Ghibaudys' third-party action against ITT despite his inability to maintain a direct action against ITT. We see no reason to find Ghibaudys' assignment of that action to plaintiff void.

■ ITT also argues that plaintiff has no standing to prosecute this appeal because Ghibaudys had no cause of action against ITT to assign, and plaintiff therefore gained nothing by the assignment. The assignment provides, in relevant part, that the Ghibaudys agree to assign their cause of action for contribution against ITT to plaintiff, and in return, plaintiff

> "agrees to refrain from executing upon Florence Ghibaudy and Honore Ghibaudy, and their insurance carrier, Western Casualty and Surety Company, in an amount in excess of the aforesaid $50,000.00 and taxable costs of $1,348.22 and the amount of any judgment for contribution which is obtained against International Telephone & Telegraph Company."

The Contribution Among Joint Tortfeasors Act provides that any tortfeasor who settles with a claimant pursuant to a release or covenant not to sue or not to enforce judgment is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement. (Ill. Rev. Stat. 1987, ch. 70, par. 302(e).) ITT argues that, because the liability of ITT was not extinguished by the settlement between plaintiff and Ghibaudys, Ghibaudys have no right to recover contribution from ITT. Therefore, ITT argues, plaintiff received nothing by the assignment and has no standing to prosecute this appeal.

Plaintiff responds that because ITT had no liability to plaintiff in any case due to the running of the statute of limitations, it was not necessary to extinguish ITT's liability in the release in order to preserve Ghibaudys' right to recover contribution from ITT. This precise

question has been disposed of by this court adversely to plaintiff. In *Pearson Brothers Co. v. Allen* (1985), 131 Ill. App. 3d 699, 476 N.E.2d 73, this court held that the joint tortfeasor's liability must be extinguished *by the settlement*. The agreement entered into between plaintiff and Ghibaudys was an agreement not to enforce judgment which did not extinguish ITT's liability, but was entered into for the express purpose of preserving ITT's liability. Therefore, upon execution of the agreement, Ghibaudys lost their right to recover contribution from ITT. Because plaintiff received nothing by the assignment, he has no standing to prosecute this appeal with respect to ITT.

In any event, the trial court properly directed a verdict in favor of ITT and against third-party plaintiffs for the same reasons we found that it properly struck the allegations of plaintiff's complaint with respect to Empire's duty to warn. It was not reasonably foreseeable that one of ITT's B67RA28 gas valves would be installed on the floor furnace involved in this case and therefore ITT had no duty to warn of the danger inherent in the presence of a jumper on the gas valve.

■ The final argument raised by plaintiff relates to jury instructions. Plaintiff first argues that the trial court erred in giving, over plaintiff's objection, an instruction regarding plaintiff's contributory negligence. The jury was instructed:

> "It was the duty of the plaintiff before and at the time of the occurrence to use ordinary care for his own safety. The failure of the plaintiff to use ordinary care for his own safety is known as contributory negligence. The plaintiff's contributory negligence if any does not bar his recovery. However, the total damages, if any, to which he would otherwise be entitled to recover is reduced in proportion to the amount of his negligence. This is known as comparative negligence."

Plaintiff argues that this instruction was erroneous because the concept of contributory negligence does not apply to actions in strict liability, and therefore, the instruction should not have been given with respect to defendant Empire. We find it unnecessary to discuss the merits of plaintiff's argument, as we find any error in the giving of the instruction to be harmless. The jury found against plaintiff and in favor of Empire on the question of liability. The jury found that the furnace was not defective or unreasonably dangerous at the time it left Empire's control. Therefore, the jury never reached the issue of plaintiff's comparative fault with respect to defendant Empire. A judgment will not be reversed on the basis of faulty instructions unless the party complaining of the instructions can show prejudice as a result. (*Kohutko v. Four Columns, Ltd.* (1986), 148 Ill. App. 3d 181, 189, 498

N.E.2d 522, 527.) We find no prejudice in the giving of the instruction.

 Plaintiff also argues that the trial court erred in refusing to give his tendered instructions No. 28 and No. 29. Plaintiff's instruction No. 28 states:

"More than one person may be to blame for causing an injury. If you decide that the defendants were negligent and that their negligence was a proximate cause of the injury to the plaintiff, it is not a defense that some third party who is not a party to the suit may have also been to blame."

Because this instruction refers to the concept of negligence, it is evident that it was meant to apply only to defendants Ghibaudys, against whom plaintiff recovered a judgment. Again, we are unable to see what prejudice resulted from the trial court's refusal to give this instruction. Furthermore, this instruction was tendered by one of plaintiff's cocounsel but was objected to by plaintiff's other cocounsel. It was only after plaintiff's cocounsel objected that the trial court refused to give the instruction. Plaintiff cannot now claim error in the refusal of the instruction.

With respect to plaintiff's instruction No. 29, plaintiff argues in his brief that it is identical to No. 28 except that it refers to an object rather than to an unknown third party. The record reflects that plaintiff's instruction No. 29 is an issues instruction which was given by the court. Plaintiff cannot complain that the trial court refused to give his tendered instruction No. 29 where the record clearly shows that it was given.

For the foregoing reasons, we affirm the judgment of the circuit court of St. Clair County.

Affirmed.

LEWIS, J., concurs.

JUSTICE HARRISON, specially concurring:

I agree with the result reached by the majority, but write separately because I cannot accept its analysis on the question of foreseeability.

As the majority indicates, a central issue in plaintiff's claim against Empire for breach of its duty to warn is "whether Empire knew or should have known that someone would replace its original gas valve with a different gas valve containing a jumper." 183 Ill. App. 3d at 187.) Empire contends that it was not objectively reasonably foreseeable that such a replacement would be made, but I believe that

the record contains considerable evidence which would support a contrary conclusion.

The evidence shows, for example, that ITT, the manufacturer of the valve which should have been used on the furnace here, also marketed other valves of similar design and configuration which could be installed on the furnace and which did contain jumpers. Indeed, before it began installing limit switches on its furnaces, Empire used such valves. The particular valve here was an ITT product. Although certain modifications had to be made in order for it to fit, there was evidence that these modifications were not complex and could be easily made without affecting the valve's safety or performance. The record makes clear that the problem with the valve had nothing to do with the modifications, only with the fact that it contained a jumper.

Moreover, the installer's guide published by Empire for use with its furnace, a copy of which was admitted into evidence, recommended in the troubleshooting section that if one found that the register temperature controls had no effect on the furnace, one should "[c]heck combination valve terminals for shorts, or a jumper between the two inside terminals (see 14)—jumper should not be there when temperature limit controls are used." In my view, this indicates not merely that use of valves with jumpers was objectively reasonably foreseeable, but that Empire had actual knowledge that such valves could and would be installed in the unit.

Empire was well aware of what could happen if a jumper was present on the valve in its furnace. The limit switch could not perform its function, the unit would overheat, and fire might result. That is precisely what happened here. Given this evidence, I would conclude that it was objectively reasonably foreseeable that the valve would be replaced as it was and that someone could sustain the type of injury suffered by plaintiff.

For similar reasons, I would hold that an injury such as plaintiff's was foreseeable by ITT. Although the ITT valve which was on the furnace at the time of the fire differed from the model normally installed by Empire, it was, as previously noted, capable of being fitted to the furnace without substantial modification. The valve was distributed by ITT with a jumper affixed to it. That ITT knew that it might be installed on furnaces containing limit switches is reflected in its installation and service brochure, which indicates that the jumper should be removed if an auxiliary control, such as a limit switch, is used. In addition, representatives from ITT testified that they were aware that if a jumper were used in a furnace containing a limit switch, the limit switch would not operate properly.

Although I believe that the type of injury sustained by plaintiff was objectively reasonably foreseeable by both Empire and ITT, I nevertheless agree that the circuit court acted correctly in directing a verdict in favor of Empire and against plaintiff and in favor of ITT and against the third-party plaintiffs, the Ghibaudys, on the duty to warn claims. Generally, a duty to warn exists where there is unequal knowledge between the manufacturer and user. (*In re Estate of Dickens* (1987), 161 Ill. App. 3d 565, 570, 515 N.E.2d 208, 211.) In this case, both plaintiff and the Ghibaudys qualify as users, but Mr. Ghibaudy, who installed the furnace in his house, indicated that he had experience as an electrician and plumber and knew about jumpers and their effects on limit switches. In other words, Ghibaudy had equal knowledge. Because he already knew what would happen if a jumper were present on the gas valve, Ghibaudy cannot now complain that an additional warning was not given to him.

The only other user was plaintiff. Plaintiff certainly cannot be said to have equal knowledge. Indeed, the evidence indicates that he knew nothing at all about the furnace. There is, however, a more basic impediment to plaintiff's claim: proximate cause. In a products liability action, a plaintiff must prove that the claimed defect in the product was a proximate cause of his injury. (*Artis v. Fibre Metal Products* (1983), 115 Ill. App. 3d 228, 232, 450 N.E.2d 756, 759; *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 85, 508 N.E.2d 1201, 1207.) Here, the defect complained of is, of course, the inadequate warning. Plaintiff has failed to establish, however, how more extensive warnings might have helped avoid the accident in which he was injured. Plaintiff certainly never attempted to change or modify the gas valve in the furnace himself, and there is no indication that he had anyone attempt to do it for him. In fact, plaintiff did nothing to the furnace except block the grate. A warning against using a jumper on the gas valve would scarcely have deterred him from doing that.

The jury may have concluded that Ghibaudy was the one who replaced the valve, but as we have just discussed, he had equal knowledge of the jumper/limit switch problem. He therefore did not need additional warnings. The jury evidently rejected the claim that the furnace had a jumper on it at the time it left the factory. Based on the record before us, the only other way the valve with the jumper might have gotten on the furnace is if it had been installed by the company which first installed the furnace in a different residence before the furnace was acquired by Mr. Ghibaudy. As with Ghibaudy, however, the record indicates that the installer from that company had equal knowledge of the jumper/limit switch problem. Additional warnings were

therefore not required for him either. Given this, I fail to see, and plaintiff has not explained, how the absence of more complete warnings as to the presence of jumpers on the valves contributed in any way to his injuries. I therefore concur.