(No. 76491

BARBARA CLAUDY, Indiv. and as Adm'r of the Estate of Keith Claudy, Deceased, Appellee, v. COMMONWEALTH EDISON COMPANY et al. (Larry Jones, Indiv. and d/b/a AAA Tree Service, Appellant).

*Opinion filed November 2, 1995.—Rehearing denied January 29, 1996.*

NICKELS, J., joined by BILANDIC, C.J., and McMORROW, J., dissenting.

Lord, Bissell & Brook (Hugh C. Griffin, Richard E. Mueller and Diane I. Jennings, of counsel), and Kiesler & Berman (Alan P. Miller and Patti M. Deuel, of counsel), all of Chicago, for appellant.

Bernard R. Nevoral & Associates, Ltd., of Chicago (Bernard R. Nevoral, Douglas C. Dorn, and Paul W. Pasche, of counsel), for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

This appeal arises from the dismissal of an assigned third-party complaint for contribution. Plaintiff, Barbara Claudy, filed a wrongful death action in the circuit court of Cook County against Commonwealth Edison and the City of Sycamore. Plaintiff and the City of Sycamore later settled the suit. As part of the settlement, the City of Sycamore assigned to the plaintiff its right of contribution against Larry Jones, the decedent's employer. When plaintiff sought to exercise this right of contribution, the circuit court held that the purported assignment was invalid and dismissed the third-party contribution complaint. The appellate court reversed the circuit court, reinstated the third-party complaint, and issued a certificate of importance. (255 Ill. App. 3d 714.) This court has jurisdiction pursuant to Supreme Court Rule 316 (134 Ill. 2d R. 316). We reverse.

## FACTUAL AND PROCEDURAL HISTORY

On July 24, 1979, plaintiff's husband, Keith Claudy, was electrocuted while removing a tree located near some power lines within the confines of the City of Sycamore (hereinafter, the city). At the time, Keith Claudy was working for Larry Jones (hereinafter, the employer), whom the city had engaged to remove the tree. After her husband's death, plaintiff filed a wrongful death action against the city and Commonwealth Edison. In response to plaintiff's suit, the city filed an amended third-party complaint for contribution against the employer, individually and doing business as AAA Tree Service.

Plaintiff also filed a workers' compensation claim against the employer. The employer was insured by

American Mutual Liability Insurance Company, and American Mutual paid $102,876.09 in satisfaction of the plaintiff's workers' compensation claim. Based on this payment, American Mutual acquired a potential workers' compensation lien against any settlement proceeds received by plaintiff from a third party. Subsequently, on March 9, 1989, American Mutual was declared insolvent, and the Illinois Insurance Guaranty Fund was substituted for American Mutual pursuant to statute. See 215 ILCS 5/532 *et seq.* (West 1992).

In 1989, plaintiff and the city agreed that $500,000 represented the damages suffered by the plaintiff and, based upon this figure, settled the wrongful death suit. By the terms of a subsequently amended settlement agreement, plaintiff released all direct claims she had against any party in connection with her husband's death, including the city, Commonwealth Edison and the employer. (Insofar as no third-party complaint for contribution had been filed against Commonwealth Edison, it was released from tort liability and dismissed from the action with prejudice after the settlement.) In return, the city paid plaintiff $400,000 and, additionally, assigned to the plaintiff its right of contribution against the employer. American Mutual's workers' compensation lien of $102,876.09, minus attorney fees, was satisfied from the $400,000 settlement amount.

On November 29, 1990, the employer moved to dismiss the third-party complaint for contribution and this motion was granted. On March 5, 1991, plaintiff filed a motion for reconsideration but that motion was denied. In denying the motion for reconsideration, the trial judge stated:

"In the instant case the purported assignment allows the plaintiff to retain the proceeds of a successful prosecution of the contribution action, thus increasing her total recovery. In the opinion of this court, this amounts to a perversion of the intent and purpose of the Contribution

Act which was designed to apportion damages among the tortfeasors based upon relative degree of culpability, not to increase the total damages available to plaintiff."

The appellate court reversed and reinstated the third-party complaint for contribution, ruling that the assignment at issue did not violate the Joint Tortfeasor Contribution Act, the Workers' Compensation Act or the Illinois Insurance Code. (255 Ill. App. 3d 714.) Arguing that the assignment violates all three of these acts, the employer now appeals to this court.

## ANALYSIS

The Joint Tortfeasor Contribution Act (Contribution Act) provides, in pertinent part:

"§ 2. Right of Contribution. (a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.

(b) The right of contribution exists *only in favor of a tortfeasor who has paid more than his pro rata share of the common liability*, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his pro rata share of the common liability." (Emphasis added.) (740 ILCS 100/2 (West 1992).)

The employer argues that the plain language of the statute provides that a right of contribution exists only in favor of a tortfeasor. Because the Contribution Act makes no provision for assignment of a tortfeasor's right of contribution, the employer concludes that the statutory language prohibits a tortfeasor from assigning a contribution action, especially to the plaintiff who, by definition, is not a tortfeasor.

Plaintiff counters that the statutory language does not explicitly prohibit a tortfeasor from assigning a right of contribution. Rather, the statute provides only that a right of contribution exists when a tortfeasor pays more

than his *pro rata* share. While no right of contribution exists when a tortfeasor pays only or less than his *pro rata* share, the statute is silent as to whether a right of contribution that otherwise exists can be assigned.

Under the particular facts of this case, however, we need not decide the propriety of an assignment of the right of contribution because we find that the city did not pay in excess of its effective *pro rata* share of the common liability. (740 ILCS 100/2(b) (West 1992) ("right of contribution exists only in favor of a tortfeasor who has paid more than his *pro rata* share of the common liability").) This conclusion is premised upon the economic realities underlying the settlement agreement. Specifically, we observe that the record discloses that in reaching a settlement agreement the city and plaintiff agreed that $500,000 represented the plaintiff's damages. Thus, it necessarily follows that $500,000 is the common liability for purposes of the Contribution Act. 740 ILCS 100/2(b) (West 1992).

Rather than following the straightforward practice of paying plaintiff the entire $500,000 common liability amount and seeking contribution from the employer, the city instead paid plaintiff $400,000 and further assigned its right of contribution to the plaintiff. The basis for the $400,000 figure, however, is readily apparent upon considering that the workers' compensation awarded to plaintiff in this case was just over $100,000. Significantly, an employer's liability in any subsequent contribution action is limited to the amount awarded in the workers' compensation action. *Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 165 (holding that contribution plaintiff's maximum recovery from a plaintiff's employer is the amount of the workers' compensation award); see also Bilandic, *Workers' Compensation, Strict Liability, and Contribution in Illinois: A Century of Legal Progress?*, 83 Ill. B.J. 292

(1995) (insightful discussion of the interplay between the Contribution Act and the Workers' Compensation Act as well as the impact of the 1995 tort reform legislation).

Had the city paid plaintiff the entire $500,000 common liability and then pursued its contribution action against the employer, the most the city could have hoped to recover from the employer in its contribution action would be $100,000, the amount of the workers' compensation award.[1] In light of the contribution limitations of *Kotecki*, $500,000 less the maximum contribution amount of $100,000 from the employer thus constitutes the city's effective *pro rata* share. (*Kotecki*, 146 Ill. 2d at 165.) Of course, $500,000 less the anticipated contribution amount of $100,000 equals $400,000, the amount paid by the city to the plaintiff in full settlement of plaintiff's suit against the city.

Insofar as the city did not pay in excess of its effective *pro rata* share, it necessarily follows that it had no right to contribution to assign in the first place. (740 ILCS 100/2(b) (West 1992) ("right of contribution exists only in favor of a tortfeasor who has paid more than his *pro rata* share of the common liability").) Because the city had no right to contribution to assign, the purported

---

[1] If the city had paid plaintiff the whole $500,000 and then sought contribution from the employer, it would have been entitled to $100,000, but no more, so long as the contribution jury determined that the employer was at least 20% responsible for plaintiff's injuries, an assumption both plaintiff and the city shared in their negotiations. Indeed, while the city might ultimately be liable for in excess of $400,000 under this scenario, under no circumstances would its effective *pro rata* share be less than $400,000. Thus, by obtaining a general release from the plaintiff in return for the payment of $400,000 and the purported assignment, the city guaranteed that it would pay the least possible amount of the $500,000 common liability.

assignment in the settlement agreement was void *ab initio.*

In further support, we observe that the city is not a philanthropic organization and, indeed, were it to pay any more than necessary in settling plaintiff's claims it would violate the public trust under which it spends the monies it collects from its taxpayers. The Illinois Constitution of 1970, article VII, section 6(a), provides that public funds shall be used only for public purposes which, contrary to the arguments of the instant plaintiff, precludes giving the plaintiff a "windfall" in the form of an assignment of funds to which plaintiff is not legally entitled. The assumption that the city's assignment of its contribution action to the plaintiff was not a gift, but instead represented an economically rational act on the part of the city, further bolsters the conclusion that the $400,000 paid by the city constitutes no more than its effective *pro rata* share of the common liability in light of the *Kotecki* limitations.

## CONCLUSION

In conclusion we hold that the city did not pay in excess of its effective *pro rata* share and thus that the city had no right to contribution to assign, rendering that portion of the settlement agreement a nullity. Accordingly, we reverse the judgment of the appellate court and reinstate the trial court's dismissal of the assigned contribution action against the employer.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE NICKELS, dissenting:

The city's assignment of the contribution action to plaintiff was valid. The majority erroneously concludes that the city did not pay more than its *pro rata* share of the common liability and therefore a right of contribution never arose. In addition, the majority ignores case

law and the policies underlying the Contribution Act in reaching its conclusion. For these reasons, I respectfully dissent.

Initially, the majority states that the city and plaintiff agreed that the common tort liability was $500,000. This is not supported by the settlement agreement. At best, the settlement agreement suggests that a settlement *offer* of $500,000 plus waiver of the workers' compensation lien was made at some point in the negotiation process. This settlement offer, however, was never accepted. Neither plaintiff nor defendant employer have, in any way, suggested on appeal that the common liability was established as $500,000. According to the settlement agreement, the city and plaintiff specifically agreed that $400,000 represented the entire common tort liability against all parties arising from the death of plaintiff's husband. The circuit court found this agreement to be in good faith. The majority speculates as to how the settlement was reached but ignores the primary issues raised in the lower courts and on appeal, namely, whether a contribution action is generally assignable and whether the specific assignment to plaintiff violates public policy.

I recognize, as stated by the majority, that the assignment procedure used by the city and plaintiff is not straightforward. Plaintiff seeks to recover an additional amount as contribution liability beyond the $400,000 settlement amount. I would, however, address the arguments raised by the employer, rather than avoid the primary issues. The employer first argues that the Contribution Act only provides a right of contribution for tortfeasors, and thus, assignment to any nontortfeasor is prohibited. The employer also argues that the assignment to plaintiff violates public policy because it allows plaintiff to recover a "windfall" beyond the settlement amount.

The Contribution Act is silent as to whether a right of contribution can be assigned to a nontortfeasor, and thus, the question of assignability must be answered in accordance with general common law principles. It is well-settled that torts to property and most contract actions are assignable. (*North Chicago Street R.R. Co. v. Ackley* (1897), 171 Ill. 100, 108-09; *Christison v. Jones* (1980), 83 Ill. App. 3d 334, 337.) In contrast, personal injury actions and some contract actions of a personal nature are not assignable. (*Ackley*, 171 Ill. at 108-11; *Christison*, 83 Ill. App. 3d at 337.) In determining whether a claim can be assigned, a court examines the nature of the claim. Compare *Christison*, 83 Ill. App. 3d 334 (a legal malpractice claim is not assignable because of the personal nature of the attorney-client relationship, which requires the utmost degree of fidelity, honesty, good faith, and confidentiality), with *Daugherty v. Blaase* (1989), 191 Ill. App. 3d 496 (an insurance malpractice claim is assignable because the business relationship between an insurance broker and a client is not personal).

This case involves the assignment of a right of contribution. Although a right of contribution may arise from a personal injury tort, it is distinct from the underlying tort. (See *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 14; see also *Scott & Fetzer Co. v. Montgomery Ward & Co.* (1984), 129 Ill. App. 3d 1011, 1023 (the Contribution Act creates a separate statutory right of restitution).) An action for contribution is not an action of a personal nature but rather an action for the equitable division of damages. The nature of the city's action for contribution is recovery for overpayment of its share of the total damages rather than for personal injury, and such claims have been considered assignable. (See *Puckett v. Empire Stove Co.* (1989), 183 Ill. App. 3d 181; see also 18 Am. Jur. 2d *Contribution* § 3 (1985).) Thus, a right of contribution is generally assignable.

Next, the employer argues that the specific assignment of the contribution action to plaintiff violates public policy. This court has recognized two policies that support the Contribution Act: (1) the promotion of settlement, and (2) the equitable sharing of damages. (*In re Guardianship of Babb* (1994), 162 Ill. 2d 153, 171.) The policies underlying the Contribution Act support the assignment of the contribution action to plaintiff.

First, the assignment of the right of contribution to plaintiff encouraged settlement. It provided an additional means of settling where the city and plaintiff may not have settled otherwise. The city and plaintiff disagreed as to the amount of settlement. The city was unwilling to settle the entire suit and pursue a risky action for contribution. Litigation can be uncertain and costly, and an alleged tortfeasor may want to avoid these aspects of litigation. In this instance, however, plaintiff placed a greater value on the contribution action than the city did and was willing to take those risks.

Second, allowing assignment to plaintiff in this case promotes the equitable sharing of damages. By receiving an assignment from the city, plaintiff has not changed the nature of the contribution action or the defenses available to the employer. In settling the entire suit with plaintiff, the city had the absolute right to recover a *pro rata* share of the settlement amount from the employer. Both before and after assignment, the employer would be responsible only for the employer's *pro rata* share of the settlement amount. In no event would the employer be required to contribute more because of the assignment. Moreover, the employer did not challenge the settlement amount of $400,000 and has not challenged the settlement amount on appeal. The employer's contribution liability is limited to a percentage of $400,000, which the parties never disputed and which was approved by the circuit court. Accord-

ingly, the employer has not been prejudiced by the assignment.

Furthermore, in this case, invalidating the assignment to plaintiff actually frustrates the equitable sharing of damages. Although the majority states that the city paid less than its *pro rata* share, the fact remains that the city paid the entire amount required to settle the case, while the employer did not pay any part of the settlement amount. If the right of contribution is eliminated completely, the employer would receive the windfall because the employer would not contribute at all.

In addition, assignment of the contribution action would not affect the employer's liability under the Workers' Compensation Act. This court has held that a settling tortfeasor may seek contribution from an employer in spite of the protection of the Workers' Compensation Act. (*Doyle v. Rhodes* (1984), 101 Ill. 2d 1.) In *Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, this court held that a settling tortfeasor may not recover more in contribution from an employer than the employer's statutory liability under the Workers' Compensation Act. An assignor cannot assign any more than it possesses. (*Collins Co. v. Carboline Co.* (1988), 125 Ill. 2d 498, 512.) Thus, in pursuing the contribution action, plaintiff would be limited by *Kotecki*.

Neither would assignment affect the workers' compensation lien. When an employer pays workers' compensation benefits to an employee, the employer acquires a lien against any award the employee receives from a third party. (Ill. Rev. Stat. 1979, ch. 48, par. 138.5(b).) In this case, the employer (or its insurer) paid benefits and therefore acquired a lien. After plaintiff received the settlement proceeds of $400,000, the circuit court ordered plaintiff to repay the employer the workers' compensation benefits, minus statutory attorney

fees, and the workers' compensation lien has been satisfied. The employer (or its insurer) was totally reimbursed for the workers' compensation benefits and has paid a net of $0. Thus, both policies underlying the Contribution Act support the assignment.

Case law on the issue further supports assignment to plaintiff. In *Puckett v. Empire Stove Co.* (1989), 183 Ill. App. 3d 181, the plaintiff brought a personal injury action against several alleged tortfeasors. As in this case, one of the tortfeasors assigned a right of contribution to the plaintiff. The appellate court found that the plaintiff had a direct and immediate interest in the action. In addition, the plaintiff did not seek to promote "the litigation of another which otherwise might not be maintained." (*Puckett*, 183 Ill. App. 3d at 191.) The appellate court concluded that the assignment to the plaintiff did not violate public policy but ultimately held that the assignment was invalid for a different reason. The appellate court, however, did not address the specific issue raised in this case. No other Illinois case has addressed the issue raised here.

Other jurisdictions have considered whether a plaintiff may receive an assignment of a contribution claim to increase the plaintiff's recovery. In *Robarts v. Diaco* (Fla. App. 1991), 581 So. 2d 911, the court considered this specific issue and held that assignment to the plaintiff does not violate public policy. The Florida contribution statute considered by the court is virtually identical to the Illinois statute. (See Fla. Stat. ch. 768.31(2)(b) (1989).) In upholding the assignment, the court stated:

> "We hold, therefore, that the assignment of the doctors' rights of contribution in this case is not invalid merely because it was assigned to the original plaintiff in the tort action who may or may not have received full compensation for the injuries sustained by reason of the tort. If the assigning tortfeasor should choose to bestow a 'windfall'

upon the plaintiff by reason of such an assignment, that is a matter of contract between those parties. Such a plaintiff may, by way of such an assignment, ultimately recover more than what his full compensation for damages resulting from the tort alone would have been. However, that plaintiff cannot [citation] recover more from a nonsettling joint tortfeasor on the assignment than the assigning tortfeasor paid in excess of his pro rata share of liability for the tort. Neither can that plaintiff recover from a nonsettling joint tortfeasor more than that nonsettling joint tortfeasor's pro rata share of the reasonable value of the entire liability." *Robarts*, 581 So. 2d at 915.

Similarly, in *Bush v. Superior Court* (1992), 10 Cal. App. 4th 1374, 13 Cal. Rptr. 2d 382, the court held that a tortfeasor could assign an equitable indemnity action to the plaintiff. The court held that the assignment did not violate public policy even though it might provide an additional recovery to the plaintiff. In California, equitable indemnity, like contribution, provided that one party may recover the proportionate share of liability from a nonsettling tortfeasor. In *Bush*, the court held that the assignment was valid because it encouraged settlement and because it did not require any defendant to pay more than his proportionate share of liability. The court recognized that the defendant was, in truth, seeking the windfall:

"[T]he policy against excess recovery is primarily designed to prevent the imposition of a disproportionate burden on the protected tortfeasor. [Citation.] When one who is asked to bear no more than his or her proportionate share raises this shield he or she implicitly complains on behalf of another tortfeasor who has borne a disproportionate share. This prompts the rhetorical question: ' " 'What's Hecuba to him or he to Hecuba, that he should weep for her?' " ' " *Bush*, 10 Cal. App. 4th at 1388, 13 Cal. Rptr. 2d at 390.

See also *Ogle v. Craig Taylor Equipment Co.* (Alaska 1988), 761 P.2d 722 (allowing assignment of contribution

action to the plaintiff without addressing whether this assignment violates public policy).

In conclusion, the city did not act gratuitously; it made an economically rational decision. It realized that its liability, as determined at a trial, could exceed $400,000. As a matter of contract, the city agreed to assign the contribution action to plaintiff. The city freely bargained away its right of contribution in order to eliminate its tort liability to plaintiff. Plaintiff took the chance that she would receive little or nothing in the contribution action. There is no suggestion of collusion to increase the employer's liability in this case. According to the majority, although plaintiff released all potential parties, no contribution claim ever arose. In effect, the employer received a windfall simply by refusing to settle. For the foregoing reasons, I would find the assignment of the contribution action valid.

CHIEF JUSTICE BILANDIC and JUSTICE McMORROW join in this dissent.