SECOND DIVISION
September 28, 2010

No. 1-09-2278

| | | |
|---|---|---|
| JOHN MONDSCHEIN and CAROL MONDSCHEIN, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| POWER CONSTRUCTION COMPANY, POWER CONTRACTING AND ENGINEERING CORPORATION, WAUKEGAN STEEL SALES, INC., LOYOLA UNIVERSITY OF CHICAGO, and LINDAHL BROTHERS, INC., | ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| _____ | ) | No. 04 L 7854 |
| (John Mondschein, as Assignee of Power Contracting and Engineering Corporation, | ) ) ) | |
| Defendant and Third-Party Plaintiff-Appellee; | ) ) ) ) | |
| | ) | Honorable |
| Joliet Steel and Construction, Inc., | ) ) | Sheldon A. Harris and Richard J. Elrod, |
| Third-Party Defendant-Appellant). | ) | Judges Presiding. |

_____JUSTICE THEIS delivered the opinion of the court:

This appeal arises out of an assignment of a third-party contribution action in connection with a construction site accident. In the underlying lawsuit, plaintiff, John Mondschein, an injured worker at the site, sued the general contractor, Power Contracting and Engineering Corporation (Power), among

others, for negligence. Power then filed a third-party complaint for contribution against Mondschein's employer, Joliet Steel & Construction, Inc. (Joliet Steel), a subcontractor on the project. Mondschein ultimately settled the underlying action against Power for $2,673,000 and an assignment of Power's third-party claim for contribution against Joliet Steel. Mondschein, as assignee of Power, then filed an amended third-party complaint against Joliet Steel seeking contribution under the Illinois Joint Tortfeasor Contribution Act (the Contribution Act) (740 ILCS 100/1 et seq. (West 2002)). After a trial on the contribution claim, a jury apportioned the liability of Joliet Steel at 35%. The trial court entered judgment against Joliet Steel for 35% of Power's total loss of $2,673,000.

On appeal, Joliet Steel raises the following contentions: (1) the circuit court erred in denying its motion to dismiss the contribution action pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2006)), because Power had no right to assign its contribution claim; and (2) the circuit court erred in denying its right to a set off based on the insurance it already purchased on Power's behalf as an additional insured on Joliet's Steel's commercial general liability (CGL) policy. For the following reasons, we affirm in part and reverse and remand in part with directions.

BACKGROUND

In May 2003, Loyola University entered into a construction contract with Power for a project known as the Life Sciences Education and Research Building at Loyola's Chicago campus. Power subsequently entered into a subcontract with Waukegan Steel Sales, Inc., for the performance of all of the ironwork. In turn, Waukegan then subcontracted with Joliet Steel for the performance of the steel work. That subcontract contained a provision that stated in pertinent part as follows:

"Subcontractor indemnifies and holds harmless *** the prime or

> general contractor, the owner and others required in the Project
>
> contract Documents *** from and against all claims, damages, losses and
>
> expenses, *** arising out of or resulting from Subcontractor's work,
>
> goods or services provided hereunder."

The subcontract also contained a provision which required Joliet Steel to purchase CGL insurance, naming Power as an additional insured with respect to operations performed under the subcontract with limits of $1 million per occurrence.

In accordance with the subcontract, Joliet Steel purchased a CGL policy from Cincinnati Insurance Company with a limit of liability of $1 million per occurrence. Power was named as an additional insured on the policy with respect to "operations performed by [Joliet Steel] in connection with [the] project." The Cincinnati CGL policy also had an exclusion for employer liability coverage for bodily injuries to Joliet Steel's employees arising out of or in the course of their employment.

On December 2, 2003, Mondschein, a Joliet Steel employee, was injured while working at the construction site. He initially filed a workers' compensation claim against Joliet Steel. Its workers' compensation insurer, United Heartland Insurance Company, satisfied that claim. United Heartland then acquired a workers' compensation lien against any settlement proceeds Mondschein potentially would receive from a third party. Mondschein then filed a complaint against Power, Loyola, and Lindahl Brothers, Inc., another subcontractor, alleging that their negligence directly contributed to his injuries.[1] Power then filed a third-party complaint for contribution against Joliet Steel pursuant to the Contribution Act. 740

---

[1] Mondschein also sued other defendants, including Waukeegan Steel, but they were granted summary judgment.

3

1-09-2278

ILCS 100/1 et seq. (West 2002).

On December 7, 2007, Mondschein entered into a settlement agreement with Power, Loyola, and Lindahl. The settlement agreement provided that Power, Loyola, and Lindahl would pay Mondschein $2.8 million and, as additional consideration, Power would assign to Mondschein its contribution claim against Joliet Steel. Under the settlement allocation, Cincinnati agreed to pay $1 million on behalf of Power. Power's other insurers paid an additional $1.7 on its behalf.[2] Additionally, Joliet Steel did not waive its workers' compensation lien. Therefore, as required under the Workers' Compensation Act (820 ILCS 305/5(b) (West 2006)), Mondschein agreed to satisfy the workers' compensation lien out of the settlement proceeds. On December 13, 2007, the circuit court entered an order finding the settlement was made in good faith and dismissed the underlying claims against the settling defendants.

Thereafter, Joliet Steel filed a motion to dismiss Power's pending third-party contribution action. Therein, it maintained that the contribution action could not stand because, inter alia, the settlement agreement failed to extinguish Joliet Steel's liability and failed to properly allocate the settlement among the settling defendants. In response to the motion to dismiss, on May 2, 2008, Mondschein and the settling defendants executed a revised settlement agreement.

Under the revised agreement, the parties clarified that Cincinnati paid $1 million on behalf of Power and that Power's other insurers paid $1,673,000 on Power's behalf.[3] The revised agreement also provided that in addition to releasing the tort claims of the settling defendants, Mondschein extinguished

---

[2] The remaining $100,000 was paid by other insurers on behalf of Lindahl and Loyola.

[3] The remaining $27,000 of coverage was allocated to Mondschein's wife, who had also been a party to the underlying suit.

4

the tort liability of Joliet Steel. Over Joliet Steel's objection, the circuit court granted Mondschein's motion for a good-faith finding as to the revised agreement. Thereafter, Joliet Steel withdrew its motion to dismiss the contribution action.

Subsequently, Mondschein, as assignee of Power, filed an amended third-party contribution action against Joliet Steel. In response, Joliet Steel filed a motion to dismiss the amended action pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2008)), arguing that Cincinnati funded the settlement and, therefore, was subrogated to Power's right to contribution under section 2(f) of the Contribution Act. 740 ILCS 100/2(f) (West 2008). Therefore, as subrogee, it was the real party-in-interest and Power had no contribution rights to assign. The circuit court denied Joliet Steel's motion to dismiss.

Joliet Steel then filed an answer and affirmative defenses to the amended contribution action. Therein, it asserted under Kotecki v. Cyclops Welding Corp., 146 Ill. 2d 155 (1991), that any right of contribution was limited by its workers' compensation liability. It also asserted that it had a right to a set off of the $1 million policy it had purchased, which was paid on behalf of Power in settlement of the underlying lawsuit.

The contribution action against Joliet Steel proceeded to a trial, and the jury apportioned the liability of Joliet Steel at 35%. On July 31, 2009, the circuit court made the following findings: (1) Joliet Steel waived its right to limit its liability to workers' compensation; (2) its waiver did not violate the Illinois Construction Contract Indemnification for Negligence Act (Anti-Indemnification Act) (740 ILCS 35/0.01 (West 2008)); (3) it did not have a right to a set off; and (4) it was liable for 35% of $2,673,000, which was Power's total loss. Joliet Steel then filed this timely appeal.

ANALYSIS

Joliet Steel initially contends that the circuit court erred in denying its motion to dismiss the contribution action pursuant to section 2-619(a)(9) of the Code. Section 2-619(a)(9) permits involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2008). The provision provides a means for disposing of issues of law or easily proved issues of fact at the outset of the case. Van Meter v. Darien Park District, 207 Ill. 2d 359, 367 (2003). The defendant bears the initial burden of proof of the affirmative matter and, if satisfied, the burden shifts to the plaintiff to show that "the defense is unfounded or requires the resolution of an essential element of material fact before it is proven." Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill. 2d 112, 116 (1993). When ruling on a motion to dismiss, the court " 'must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party.' " Van Meter, 207 Ill. 2d at 367-68, quoting In re Chicago Flood Litigation, 176 Ill. 2d 179, 189 (1997). Our review of a dismissal under section 2-619 is de novo. Van Meter, 207 Ill. 2d at 368.

Specifically, Joliet Steel attacks the validity of the assignment of the contribution claim to Mondschein. Although it generally recognizes that a right to contribution under the Contribution Act may be assigned (Block v. Pepper Construction Co., 304 Ill. App. 3d 809, 815 (1999)), it maintains that the insurers, by paying the underlying settlement in full on Power's behalf, were then subrogated to Power's right of contribution under section 2(f) of the Contribution Act. 740 ILCS 100/2(f) (West 2006). As a result, it argues that the insurers were the only parties with an enforceable right to assign and, therefore, Power's assignment of an inchoate right was not a valid assignment and Mondschein's amended third-party complaint for contribution must be dismissed.

In response, Mondschein argues that even if the insurers had the sole right to assign the

6

contribution claim, it sufficiently established that the insurers agreed to assign their subrogation rights. In support, Mondschein presented the revised settlement agreement as evidence that an assignment of the right of contribution included Power's insurers. The agreement provided that the assignment was entered into by and between Mondschein and Power, and it defined Power to include its "insurers." The insurers never executed the revised settlement agreement. However, no objection to the assignment was ever raised at the time of the settlement or at the time of the good-faith finding by the circuit court.

Additionally, in response to the motion to dismiss, Mondschein presented a confirmation of assignment, which was signed and notarized by the insurers' counsel on the insurers' behalf. Therein, it provided as follows:

"This Confirmation of Assignment is intended to confirm the fact that [Power] and their insurers, Cincinnati Insurance Companies, St. Paul/Travelers Insurance Companies, and Illinois National Insurance Company, assigned their respective rights to any and all contribution claims against Joliet Steel to [Mondschein] as evidenced by the [settlement agreement] and clarified by the [revised settlement agreement]. This document is to make clear that any rights to contribution claims held by the insurance companies of Power *** are hereby assigned to [Mondschein]."

Here, where Mondschein offered proof establishing facts that would obviate the grounds of the defect, namely, that the insurers agreed to assign any subrogated right to contribution to him, the court properly denied the motion. 735 ILCS 5/2-619(c) (West 2008).

7

1-09-2278

Next, we are asked to consider whether the circuit court erred in denying Joliet Steel's affirmative defense, namely, a right of set off to the contribution liability owed to Power. Initially, Mondschein contends that Joliet Steel forfeited its right to raise this affirmative defense because it failed to raise it until six weeks before trial on the contribution claim.

Pursuant to section 2-613 of the Code, affirmative defenses must be set forth in the answer or the reply to a complaint. 735 ILCS 5/2-613 (West 2006). Here, although Joliet Steel did not plead the defense of set off in its answer to the original contribution action brought by Power, at that time the defense had not yet been perfected; Cincinnati had not yet agreed to cover Power for the loss. Mondschein subsequently filed its amended contribution claim as assignee. In response, Joliet filed a motion to dismiss that was subsequently denied. Thereafter, it timely filed its answer and its affirmative defense to the amended pleading.

Moreover, "failure to plead an affirmative defense in an initial answer is not necessarily a waiver." Rognant v. Palacios, 224 Ill. App. 3d 418, 422 (1991). Rather, section 2-616(a) of the Code (735 ILCS 5/2-616(a) (West 2006)) permits a party to amend its pleadings to include an affirmative defense any time prior to judgment. Consequently, we reject Mondschein's argument that the affirmative defense asserted in Joliet's Steel's answer to the amended contribution complaint was forfeited.

We note that forfeiture is particularly inappropriate where the party asserting the forfeiture has had ample time to respond to the defense and, as a result, has not been unfairly prejudiced. Horwitz v. Bankers Life & Casualty Co., 319 Ill. App. 3d 390, 399 (2001). The decision of whether prejudice will be suffered lies with the trial court, and it will not be reversed absent an

8

abuse of discretion.  Ocasek v. City of Chicago, 275 Ill. App. 3d 628, 637 (1995).  Here, Mondschein had ample time to respond to the defense and, therefore, has not been unduly prejudiced.

Turning to the merits, in order to determine Joliet Steel's contribution liability in the present case, it is important to note that although Joliet Steel asserted the protection of the Workers' Compensation Act as an affirmative defense to the action in contribution, the circuit court found, and it is undisputed on appeal, that Joliet Steel waived its limited liability protection by the "indemnity" provisions in its contract. Thus, it agreed to remain liable in contribution for its full pro rata share of damages proximately caused by its negligence.  See Virginia Surety Co. v. Northern Insurance Co., 224 Ill. 2d 550, 559 (2007).

Additionally, the circuit court held, and it is undisputed on appeal, that the "indemnity" provisions in the contract did not violate the Anti-Indemnification Act (740 ILCS 35/0.01 et seq. (West 2008)), which would render void any agreement in a construction contract that attempts to indemnify or hold a person harmless from that person's own negligence.  Virginia Surety, 224 Ill. 2d at 560.

With this background, we are asked to consider Joliet Steel's contentions.  The Contribution Act permits one tortfeasor "who has paid more than his pro rata share of the common liability" to recover "the amount paid by him in excess of his pro rata share." 740 ILCS 100/2(b) (West 2006).  Joliet Steel maintains that the total common liability was $2,673,000.  The jury determined that Joliet Steel was responsible for 35% of the total liability, which is $935,550.   However, it argues that it has satisfied its entire pro rata share of contribution fault through the $1 million insurance policy it agreed to purchase on Power's behalf from Cincinnati.

In support, Joliet Steel cites cases where courts have applied various analytic approaches to

determine the impact on a contribution claim where there was an agreement to procure insurance, and a settlement was reached under which the insurance absorbed all or part of the liability of the party seeking contribution. See, e.g., Briseno v. Chicago Union Station Co., 197 Ill. App. 3d 902, 905 (1990) (court held that where the parties' joint insurance absorbed the entire liability and where the parties agreed that insurance would be provided as part of their contract, the contract must be interpreted as providing "mutual exculpation" to the bargaining parties); Kirincich v. Jimi Construction Co., 267 Ill. App. 3d 51 (1994) (where the joint insurance policy did not fully protect one party against liability contribution was allowed to the extent of that party's actual loss); Kehoe v. Commonwealth Edison Co., 296 Ill. App. 3d 584 (1998) (where the construction contract evidenced an intent to provide for potential losses first by the mechanism of insurance and the party was fully protected from the loss through that insurance, there was no right to contribution); Diaz v. Legat Architects, Inc., 397 Ill. App. 3d 13, 43-44 (2009) (where the insurance funds paid for by the third-party defendant did not completely cover the loss, it was error to dismiss the third-party plaintiff's contribution action).

The question before us here is what effect the $1 million paid in settlement of the liability claims on behalf of Power had on Power's right to contribution from Joliet Steel in this action. In order to determine the impact, we begin by examining Joliet Steel's contractual obligations and the language of the insurance policy under which Power was named as an additional insured.

In accordance with its contractual obligations, Joliet Steel agreed to purchase a CGL policy naming Power as an additional insured to cover Power's losses attributable to Joliet Steel's work. Under Cincinnati's additional insured endorsement, Cincinnati's policy covered Power as an additional insured to the extent that Power's liability arose out of Joliet's Steel's work; it did not provide coverage for

10

Power's own direct negligence. The policy endorsement specifically defines an additional insured in pertinent part as follows:

"Any person or organization, hereinafter referred to as

ADDITIONAL INSURED:

* * *

(2) For whom you are required to add as an additional

insured on this Coverage Part

under:

(1) A written contract or agreement

* * *

but only with respect to liability arising out of 'your work' performed

for that additional insured by you or on your behalf."

Thus, in funding the settlement agreement, the $1 million paid on behalf of Power by Cincinnati was paid to cover Power's losses with respect to its vicarious liability for the negligent acts of Joliet Steel, and not for Power's own negligence, for which it was found to be 65% liable.

Based upon the language of the policy, the $1 million cannot be considered to have contributed to extinguishing Power's direct liability to Mondschein. Rather, the parties agreed contractually that Joliet Steel would reimburse Power for its vicarious liability through the purchase of insurance. As explained in Virginia Surety, "contribution" and "indemnification" are two separate concepts. Contribution is " 'the right that gives one of several persons who are liable on a common debt the ability to recover ratably from each of the others when that one person discharges the debt for the benefit of all; the right to

11

demand that another who is jointly responsible for a third party's injury supply part of what is required to compensate the third party.' " Virginia Surety, 224 Ill. 2d at 565, quoting Black's Law Dictionary 352-53 (8th ed. 2004). In contrast, "[i]ndemnity is the '[r]eimbursement or compensation for loss, damage, or liability in tort; esp., the right of a party who is secondarily liable to recover from the party who is primarily liable for reimbursement of expenditures paid to a third party for injuries resulting from a violation of a common-law duty.' " Virginia Surety, 224 Ill. 2d at 566, quoting Black's Law Dictionary 784 (8th ed. 2004).

Here, Power has already been reimbursed by the Cincinnati policy purchased by Joliet to the extent of its secondary liability. Power cannot seek further recovery from Joliet Steel for the $1 million loss against which it has already been fully protected and indemnified through Joliet Steel's purchase of insurance. To allow such recovery would mean that the party that purchased the policy endorsement and paid the premium would then bear that particular loss twice by both indemnification and contribution.

However, to the extent of its direct negligence, Power has incurred a loss of $1,673,000 that was not funded by Cincinnati. Thus, contribution should be allowed to the extent of Power's loss in excess of the limits of the insurance procured by Joliet Steel. Kehoe, 296 Ill. App. 3d at 591 (where a loss in excess of the limits of the insurance policy remains, a party may assert its right to contribution with respect to that amount). Here, under the settlement agreement, Power incurred a $1,673,000 loss to extinguish the common liability. Thus, Mondschein, as assignee, should be able to obtain contribution for that amount that exceeds Power's *pro rata* share of the common liability, which, based on the apportionment by the jury, would be 35% of the $1,673,000.

This conclusion is consistent with the case law cited by Joliet Steel. For example, in

Kirincich v. Jimi Construction Co., 267 Ill. App. 3d 51 (1994), the general contractor filed a third-party action for contribution against a subcontractor after it was sued by the subcontractor's employee for an injury which occurred on the construction site. The subcontractor filed a motion to dismiss and asserted that since the general contractor was an additional insured under the subcontractor's insurance policy, it was barred from seeking contribution. The court held that although the total liability to the plaintiff was $275,000, the parties' joint insurer had provided $225,000 in coverage, leaving the general contractor with a loss of $50,000 which was to be covered by the general contractor's own insurer. The court concluded that the contractor could pursue its contribution action against the subcontractor for the amount that was not covered by the joint insurance. Kirincich, 267 Ill. App. 3d at 55. "Where the joint insurance policy has not fully protected one of the parties against liability, contribution should be allowed to the extent of the party's actual loss." Kirincich, 267 Ill. App. 3d at 55.

Similarly, here, where Power has a loss not covered by the insurance procured by Joliet Steel, it is entitled to pursue its statutory right to contribution against Joliet Steel for the amount that was not covered. Accordingly, Mondschein, as assignee, should have a right of contribution for 35% of the $1,673,000 common liability.

For the foregoing reasons, the judgment of the circuit court is affirmed in part and reversed and remanded in part for entry of an order providing that Joliet Steel is liable in contribution for its *pro rata* share of the common liability, which represents 35% of Power's $1,673,000 loss.

Affirmed in part and reversed in part; cause remanded with directions.

KARNEZIS, J., and CUNNINGHAM, J., concur.

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**

**JOHN MONDSCHEIN and**
**CAROL MONDSCHEIN,**

      **Plaintiffs,**
             **v.**

**POWER CONSTRUCTION COMPANY,**
**POWER CONTRACTING AND ENGINEERING**
**CORPORATION, WAUKEGAN STEEL SALES,**
**INC., LOYOLA UNIVERSITY OF**
**CHICAGO, and LINDAHL BROTHERS, INC.,**

      **Defendants**

**(John Mondschein, as Assignee of**
**Power Contracting and**
**Engineering Corporation,**

      **Defendant and Third-Party**
      **Plaintiff-Appellee;**


**Joliet Steel and Construction, Inc.,**

      **Third-Party Defendant-Appellant).**

**No. 1-09-2278**

**Appellate Court of Illinois**
**First District, Second Division**

**Filed: September 28, 2010**

---

**JUSTICE THEIS delivered the opinion of the court.**

**Karnezis, J., and Cunningham, J., concur.**

---

**Appeal from the Circuit Court of Cook County**
**Honorable Sheldon A. Harris and Richard J. Elrod, Judges Presiding**

---

**For THIRD-PARTY**
**PLAINTIFF-**
**APPELLEE:**          **Clifford W. Horwitz**
                      **Jay R. Luchsinger**
                      **Thomas A. Kelliher**
                      **Horwitz, Horwitz & Associates, Ltd.**
                      **25 East Washington Street, Suite 900**
                      **Chicago, IL 60602**


**For THIRD-PARTY**
**DEFENDANT-**
**APPELLANT:**          **Jill B. Lewis**
                      **The Law Offices of Francis J. Marasa, Ltd.**
                      **One East Wacker Drive, Suite 2850**
                      **Chicago, IL 60601**