2020 IL App (1st) 191306-U

FIFTH DIVISION
March 31, 2021

No. 1-19-1306

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| FRANK BARNAI, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 L 7543 |
| | ) | |
| WAL-MART STORES, INC., INTERNATIONAL | ) | |
| CONTRACTORS, INC., and NULINE | ) | |
| TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| (Marilyn Barnai, as Administrator of the Estate of | ) | |
| Frank Barnai, Deceased, as Assignee of the | ) | |
| Contribution Claims of Wal-Mart Stores, Inc., | ) | |
| International Contractors, Inc., and Nuline | ) | |
| Technologies, Inc., Third-Party Plaintiff-Appellee; | ) | Honorable James N. O'Hara and |
| Summit Fire Protection Company, Third-Party | ) | Janet A. Brosnahan, |
| Defendant-Appellant). | ) | Judges, presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court, with opinion.
Justices Hoffman and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Frank Barnai[1] sued Wal-Mart Stores, Inc. (Wal-Mart), International Contractors, Inc. (ICI), and Nuline Technologies, Inc. (Nuline), after he was injured while working at a Wal-Mart store construction site.  Wal-Mart, ICI, and Nuline, in turn, filed contribution claims against Barnai's employer, Summit Fire Protection Company (Summit), which they then assigned to Barnai as part of a settlement agreement.  Following a jury trial, Summit was found 52% liable for plaintiff's injuries.  We (1) vacated the circuit court's order finding the settlement was made in good faith, (2) vacated the jury's verdict, and (3) remanded the matter for a new trial and settlement hearing.  See *Barnai v. Wal-Mart Stores, Inc., et al.*, 2017 IL App (1st) 171940 (*Barnai II*).

¶ 2     On remand, the circuit court again found the settlement with Wal-Mart, ICI, and Nuline was made in good faith.  The cause proceeded to a jury trial on the contribution claims against Summit, after which the jury found Summit 92.5% at fault, and ICI 7.5% at fault.  Summit again appeals,[2] contending that (1) the assignments of contribution actions against Summit to plaintiff are invalid; (2) Nuline's assigned contribution cause of action is time barred; (3) the court erred in finding that the settlement was made in good faith; (4) Summit is entitled to set-off; and (5) the court erred in excluding Barnai's judicial admissions.  We affirm in part, reverse in part, and modify in part the judgment of the circuit court.

---

[1]  Frank Barnai was the plaintiff who filed the original lawsuit.  Upon his death, Marilyn Barnai, Frank's wife and the administrator of his estate, was substituted as plaintiff.  For the sake of clarity and simplicity, we shall refer to both individuals as "Barnai" or plaintiff.

[2]  This case was fully briefed and randomly assigned to a different authoring justice and division in July 2020.  Because of the difference in the circuit court case numbers, an administrative error occurred resulting in the case not being assigned to the author and division which heard the prior appeal (*Barnai II*).  This appeal was not assigned to the current author and panel until January 4, 2021.

¶ 3                                                BACKGROUND

¶ 4     This court has detailed the underlying facts of this case in earlier decisions. Therefore, we will summarize only those facts pertinent to the issues now before us.

¶ 5     On October 16, 2007, Frank Barnai was injured while working for Summit at a Wal-Mart store construction site. Barnai then sued Wal-Mart (the property owner), ICI (the general contractor), and Nuline (the electrical subcontractor). Those defendants answered Barnai's complaint and filed claims against Summit pursuant to the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 *et seq.* (West 2010)). ICI later moved for partial summary judgment against Summit, which the circuit court granted, finding that Summit waived its *Kotecki* limitation and ICI was entitled to seek unlimited contribution against Summit based upon Summit's contract with ICI in which Summit agreed to waive the *Kotecki* limitation and fully indemnify both Wal-Mart and ICI. Barnai eventually settled with Wal-Mart, ICI, and Nuline for $5,073,463.71. Summit did not contribute to the settlement.

¶ 6     Barnai then filed a motion for a good faith finding as to the settlement, which recited the aggregate cash amount of the settlement and that the settling defendants had also assigned their contribution claims against Summit to Barnai. The motion neither included a copy of the settlement agreement, nor indicated the allocation of the settlement proceeds among the settling defendants. Despite those omissions, the court entered a good faith finding.

¶ 7     On April 10, 2015, Barnai, as assignee of Nuline, moved to dismiss Nuline's contribution action (the claim that Nuline had assigned to Barnai as part of the settlement agreement). The common law record does not include a copy of Barnai's motion to dismiss Nuline or the court's purported April 10, 2015, order dismissing Nuline with prejudice.[3] Only the report of proceedings

---

[3] Summit provides no common law record citation, and plaintiff erroneously cites to Summit's response to plaintiff's motion for leave to file an amended complaint.

of the hearing on the motion to dismiss Nuline is included in the record. During the hearing, counsel for Wal-Mart and ICI informed the court that he also represented Nuline, and that Nuline's contribution claim against Summit would be "dismissed with prejudice." Summit sought to confirm that Barnai would be "forever barred from bringing an action on behalf of Nuline," and the court responded, "That's what it means" and stated that the order would reflect a dismissal "with prejudice." The circuit court granted the motion. The parties do not dispute that the dismissal was with prejudice.

¶ 8     The case then proceeded to trial on the remaining contribution claims. During the jury instruction conference, Barnai submitted a proposed verdict form labeled "IPI 600.16" that listed only Wal-Mart, ICI, and Summit as possible responsible parties to Barnai's injuries. The court tendered this form to the jury.

¶ 9     After trial, the jury returned a verdict apportioning fault for Barnai's injuries as follows: Wal-Mart 10%, ICI 38%, and Summit 52%. The court entered judgment on the jury's verdict, granted Barnai's motion to convert the contribution verdict to a money judgment, and denied Summit's post-trial motion.

¶ 10    Summit appealed under case number 1-15-2773. This court heard oral arguments and obtained supplemental briefing as to whether both settling and nonsettling defendants should be included on the verdict form when allocating the *pro rata* shares of the common liability. Nonetheless, we determined that we lacked jurisdiction and dismissed Summit's appeal as there were pending claims. See *Barnai v. Wal-Mart Stores, Inc., et al.*, No. 1-15-2773 (June 23, 2017) (summary order pursuant to Supreme Court Rule 23(c) (eff. July 1, 2011) (*Barnai I*). We suggested, however, that the circuit court could cure the jurisdictional defect by entering an order

4

pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) finding no just reason existed to delay appeal of the August 31, 2015, order denying Summit's posttrial motion.[4]

¶ 11    On July 26, 2017, the circuit court duly entered an order pursuant to Rule 304(a) that there was no just reason to delay enforcement or appeal of the August 31, 2015, order denying Summit's posttrial motion. The cause then returned to this court under appellate number 1-17-1940, but with the parties standing on the briefs filed in appeal No. 1-15-2773. See *Barnai v. Wal-Mart Stores, Inc., et al.*, 2017 IL App (1st) 171940 (*Barnai II*), ¶ 10.

¶ 12    In *Barnai II*, we held that the court erred by finding the settlement in good faith because the court lacked any information as to the allocation of fault among the settling defendants. *Id.* ¶ 17. We further held that, pursuant to the Contribution Act, the jury was required to apportion fault to Nuline to correctly determine the relative fault of Wal-Mart, ICI, and Summit. *Id.* ¶ 18. We thus (1) vacated the circuit court's order entering a good faith finding and remanded the case for a new good faith hearing and (2) remanded the cause for a new trial. *Id.* ¶ 26.

¶ 13    On August 29, 2018, and following remand, plaintiff filed both a motion for leave to file a third amended complaint and a renewed motion for a good faith finding. The motion to file a third amended complaint sought to substitute Frank's wife Marilyn, the executor of Frank's estate, as plaintiff, and to add Nuline's contribution claim (that had been previously assigned to plaintiff) against Summit. This claim was substantially identical to the contribution claims of Wal-Mart and ICI against Summit that had also been assigned to plaintiff. Over Summit's objections that the Nuline claim was time barred, the circuit court granted plaintiff's motion.

¶ 14    Plaintiff's renewed motion for a good faith finding included a copy of the settlement agreement. The agreement provided that the settlement amount, $5,073,463.71, consisted of the

---

[4] The August 31, 2015, order did not address the dismissal of Nuline's contribution action that it had assigned to plaintiff.

following allocations: $2,598,058.32 (51%) to Wal-Mart, $1,525,405.39 (30%) to ICI, and $950,000 (19%) to Nuline. The agreement further provided that Wal-Mart, ICI, and Nuline were assigning their contribution claims against Summit to plaintiff as further consideration. In addition, the settlement agreement stated that Wal-Mart, ICI, and Nuline were paying "more than their *pro rata* share[s] of the common liability, which there may be between [Wal-Mart], [ICI], and [Nuline] on the one hand, and [Summit] on the other."

¶ 15    On September 28, 2018, Summit filed its response in opposition to plaintiff's renewed motion for a good faith finding. Summit argued that, since the common liability of Wal-Mart, ICI, and Nuline was $5,073,463.71 plus the value of the assignments, they did not pay more than their own *pro rata* shares of the common liability and therefore had nothing to assign, rendering the purported assignments void *ab initio*. In the alternative, Summit argued that if $5,073,463.71 was the common liability of Wal-Mart, ICI, Nuline and Summit, then any further recovery by the plaintiff would be an improper double recovery. Summit also argued that (1) it was entitled to a set-off for the amounts allocated to Wal-Mart and ICI that Summit's commercial general liability (CGL) insurer had previously paid on their behalf, and (2) the $2.6 million and $950,000 allocations to Wal-Mart and Nuline, respectively, were not within a reasonable range of their *pro rata* shares of the common liability.

¶ 16    With respect to the set-off claim, Summit included a copy of the commercial general policy it purchased, which was issued by Interstate Fire and Casualty Company (Interstate), and the affidavit of the claim representative for Interstate. The insurance policy provided that the definition of "who is an insured" was amended to include not only Summit but also "the person or organization shown in the Schedule, but only with respect to liability arising out of 'your work' for that insured by or for you." The schedule in the policy endorsement listed "Name of Person or

Organization" and the following: "Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." The affidavit indicated that Interstate funded $773,463.71 of the total settlement.

¶ 17    On January 29, 2019, the circuit court granted plaintiff's renewed motion. The court stated that it was "satisfied there is an allocation of fault among each of the settling defendants so that the amounts paid by each of the settling defendants was within a reasonable range of each of the settling defendant's fair shares pursuant to the Joint Tortfeas[o]r Contribution Act," and the cause again proceeded to a trial on the contribution claims, including Nuline's.

¶ 18    Before trial, Summit filed a motion *in limine* seeking to allow as judicial admissions the following allegations from plaintiff's third amended complaint:

> "At the time and place alleged in [plaintiff's] Complaint, [ICI] was operating as the general contractor on the project, oversaw construction on this project, conducted regular inspections on the job site, had a daily presence on the site, and had received complaints of protruding conduit posing tripping hazards to workers on the job site. Accordingly, based on these facts, [ICI] had a reasonable anticipation that it would be held liable to [plaintiff].
>
> At the time and place alleged in [plaintiff's] Complaint, [Nuline] was operating as an electrical contractor on the project, placed the conduit over which [plaintiff] tripped, and failed to properly mark or barricade the conduit it had installed. Accordingly

7

> based on these facts, [Nuline] had a reasonable anticipation that it
>
> would be held liable to [plaintiff]."

The circuit court denied Summit's motion, finding that the statements sought to be admitted were merely allegations and not judicial admissions.

¶ 19    At trial, plaintiff's expert witness opined that, although plaintiff tripped over the stubbed-up electrical conduit, the conduit was not a hazard because it had been painted bright orange. The expert witness further testified that, once Summit nonetheless identified the conduit as a hazard, it was Summit's responsibility to "do something" to prevent exposure of its employees to the hazard and that merely notifying the construction manager was insufficient. The expert witness further testified that Wal-Mart had no "responsibility" for either the state of the conduit and no control over manner that its subcontractors, such as Summit, performed their jobs.

¶ 20    Nuline's general foreman and ICI's general superintendent both testified that they did not consider the stubbed-up conduit a safety hazard, and that no one had "complained" that the conduit presented a safety hazard. Wal-Mart's construction manager also testified that he did not consider the stubbed-up conduit to be hazardous.

¶ 21    Summit's foreman, however, testified that the conduit was hazardous and that he did raise the issue at safety meetings with Nuline and ICI. Summit's foreman added that he told Summit's employees, "including Frank Barnai," to avoid it. In addition, Summit's expert witness on construction safety testified that (1) the stubbed-up conduit was a hazardous condition, (2) ICI, as the general contractor, was responsible to ensure the "workplace and the general site conditions" safe, and (3) Nuline failed to properly remedy the condition.

¶ 22    After the close of the evidence, the jury heard closing arguments. During plaintiff's closing argument, plaintiff explained to the jury that one of the instructions it would receive would state

that Wal-Mart, ICI, and Nuline made their settlement payments "in reasonable anticipation of liability to Frank Barnai." Plaintiff then argued to the jury, "Summit's admitted that. We don't have to prove that." Summit did not object to these arguments.

¶ 23    Following closing arguments, the jury then retired to deliberate, after which it allocated fault among the parties as follows: Wal-Mart, 0%; Nuline, 0%; ICI, 7.5%; and Summit, 92.5%. The circuit court later converted the allocation against Summit into a monetary judgment in the amount of $4,692,953.93. Summit then filed its post-trial motion seeking judgment notwithstanding the verdict, which the court subsequently denied. This appeal follows.

¶ 24                                        ANALYSIS

¶ 25                *The Validity of the Assignments of the Contribution Actions*

¶ 26    Summit first contends that the circuit court erred in denying its post-trial motion seeking judgment notwithstanding the verdict on all counts of the third amended complaint. Summit first argues that, if the common liability comprises both the settlement amount and the value of the assigned contribution actions, then Wal-Mart, ICI, and Nuline paid exactly their *pro rata* shares of the common liability and thus are not entitled to contribution pursuant to both section 2(b) of the Joint Tortfeasor Contribution Act (the Contribution Act) (740 ILCS 100/2(b) (West 2020)) and the holding in *Claudy v. Commonwealth Edison Co.*, 169 Ill. 2d 39 (1995). In the alternative, Summit argues that, if the common liability comprises solely the settlement amount, then Wal-Mart, ICI, and Nuline improperly assigned their contribution rights to plaintiff because plaintiff's recovery of any contribution award would result in a prohibited double recovery pursuant to section 2(c) of the Contribution Act.

¶ 27    A judgment notwithstanding the verdict (also termed a judgment *n.o.v.*) should only be granted when all of the evidence, viewed in the light most favorable to the opponent, so

overwhelmingly favors the moving party that " 'no contrary verdict based on that evidence could ever stand.' " *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 178 (2006) (quoting *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967)).  We acknowledge that Summit challenges the verdict on legal grounds only, *i.e.*, Summit's challenge centers on the interpretation of the Contribution Act.  Nonetheless, a motion for judgment *n.o.v.* presents a question of law.  *Id.*  We thus review the circuit court's denial of the motion for judgment *n.o.v.* and the interpretation of the Contribution Act *de novo*.  See *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 132 (1999) (motions for judgment *n.o.v.*); *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 16 (interpretation of statutes).

¶ 28    Principles of statutory construction are well established.  When construing a statute, our goal is to "ascertain and give effect to the intent of the legislature."  *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009).  This inquiry begins with the language of the statute, "the best indicator of legislative intent."  *Id.*  Where the language in the statute is clear and unambiguous, we apply the statute as written without resort to extrinsic aids of statutory construction.  *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 6-7 (2009).  Since all provisions of a statutory enactment are viewed as a whole, we interpret the statute in light of other relevant portions of the statute and do not construe words and phrases in isolation.  *Carver v. Sheriff of La Salle County*, 203 Ill. 2d 497, 507-08 (2003).  We must further presume that the General Assembly did not intend absurdity, inconvenience, or injustice.  *Id.* at 508.  In essence, we must employ a " 'practical and common-sense construction.' "  *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25 (quoting *Automatic Voting Machine Corp. v. Daley*, 409 Ill. 438, 447 (1951)).  The interpretation of a statute is a question of law that we review *de novo*.  *Id.* ¶ 16.

¶ 29    The Contribution Act promotes two important policies:  the encouragement of (1) the equitable apportionment of damages, and (2) settlements with an injured plaintiff.  *In re Guardianship of Babb*, 162 Ill. 2d 153, 171 (1994).  Sections 2(b) and 2(c) of the Contribution Act provide in relevant part as follows:

> "(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his *pro rata* share of the common liability, and his total recovery is limited to the amount paid by him in excess of his *pro rata* share.  No tortfeasor is liable to make contribution beyond his own *pro rata* share of the common liability.
>
> (c) When a release *** is given in good faith to one or more persons liable in tort arising out of the same injury ***, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release ***, or in the amount of the consideration actually paid for it, whichever is greater."  740 ILCS 100/2(b), 2(c) (West 2018).

Section 2(c) above, the "setoff" provision, protects nonsettling tortfeasors from paying more than their *pro rata* share of the final judgment for damages, which promotes the Contribution Act's policy of equitably apportioning damages among joint tortfeasors.  *Babb*, 162 Ill. 2d at 173.  In addition, the setoff rights in section 2(c) further reflects the public policy of "protecting the financial interests of nonsettling tortfeasors."  *Id.*  It is well established, however, that one or more third-party tortfeasors may assign their rights to contribution, even to a nontortfeasor plaintiff.

*Cozzone v. Garda GL Great Lakes, Inc.*, 2016 IL App (1st) 151479, ¶ 12 (citing *Block v. Pepper Construction Co.*, 304 Ill. App. 3d 809, 813 (1999)).

¶ 30     In this case, the circuit court did not err in rejecting Summit's arguments in finding the settlement was made in good faith.  Summit first argues that, if the common liability consists of the settlement amount and the value of the assigned contribution actions, then Wal-Mart, ICI, and Nuline paid exactly their *pro rata* shares of the common liability and thus are not entitled to contribution pursuant to both section 2(b) of the Contribution Act and the holding in *Claudy v. Commonwealth Edison Co.*, 169 Ill. 2d 39 (1995).  The record reveals, however, that although the jury allocated only 7.5% responsibility to ICI and 92.5% to Summit, the settlement amount of $5,073,463.71 consisted of the following payments:  $2,598,058.32 (51%) from Wal-Mart, $1,525,405.39 (30%) from ICI, and $950,000 (19%) from Nuline.  Summit paid nothing toward the settlement despite the jury's finding of 92.5% responsibility.  The jury found Wal-Mart and Nuline to be not responsible at all, but they paid nearly $2.6 million and $1 million, respectively.  Even ICI, which the jury found 7.5% responsible, paid about four times its *pro rata* share of $380,509.78.  On these facts, Summit's claim that Wal-Mart, ICI, and Nuline only paid their *pro rata* shares is untenable.

¶ 31     Summit, nonetheless, argues that, pursuant to *Claudy*, we must look to the record as a whole and not solely the settlement agreement to determine the common liability.  Summit notes that, prior settlement negotiations in this case indicated that plaintiff "valued the case at $5,000,000 plus the waiver of the $2,000,000 net recoverable WC [workers' compensation] lien."  Setting aside whether evidence of an offer to compromise a claim is permissible under these circumstances (see Ill. R. Evid. R. 408 (eff. Jan. 1, 2011)), Summit's reliance upon *Claudy* is unavailing.  Notably, although presented with a certified question regarding whether a third-party tortfeasor may assign

its contribution claim against an employer to the injured plaintiff-employee, the *Claudy* court declined to resolve the matter. *Claudy*, 169 Ill. 2d at 43. Rather, the court resolved the case based upon the fact that "the record" indicated that the common liability was $500,000: the settlement amount, however, was $400,000 plus the assigned contribution claim against the employer, which was limited under *Kotecki* to the $100,000 workers' compensation award. *Id.* at 43-44.

¶ 32    In this case, we do not read *Claudy*'s vague reference to "the record" as a command for this court to comb the record to determine the common liability in all cases. As we noted in *Barnai II*, the common liability is the amount paid by the defendants to the injured party "pursuant to a good-faith settlement in a reasonable amount in exchange for a full release." (Internal quotation marks removed.) *Barnai*, 2017 IL App (1st) 171940, ¶ 17 (quoting *Zellers v. Hernandez*, 406 Ill. App. 3d 124, 127 (2010) (quoting *Mallaney v. Dunaway*, 178 Ill. App. 3d 827, 832 (1988))); see also *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 286 (1994) (" '[C]ommon liability' in the case at bar means the good-faith amount stated in the settlement agreement."). *Claudy* did not overrule or otherwise change the holding in *Ziarko*. We therefore hold that, where the settlement at issue involves cash payments and assignments of contribution actions, a court determining whether the settlement is in good faith under the Contribution Act will consider the common liability to be the cash payments only. As such, the common liability here was the amount of the cash payments stated in the settlement: $5,073,463.71.

¶ 33    In addition, the settlement in *Claudy* was not for the full common liability; instead, it represented the common liability *net of* the maximum contribution award against the employer based upon the *Kotecki* cap. See *Claudy*, 169 Ill. 2d at 43. Here by contrast, the settlement was for the full amount of the common liability without any discount for a potential contribution award

from plaintiff's employer. Summit's reliance upon *Claudy* is therefore misplaced, and its claim on this point is unavailing.

¶ 34    Summit's alternative argument fares no better. Summit asserts that, if the common liability solely consists of the settlement amount, then Wal-Mart, ICI, and Nuline improperly assigned their contribution rights to plaintiff because plaintiff's recovery of any contribution award would result in a prohibited double recovery pursuant to section 2(c) of the Contribution Act. The dissent in *Claudy*, however, noted that, although a contribution claim may arise from a personal injury tort, it is nonetheless distinct from the underlying tort. *Claudy*, 169 Ill. 2d at 47 (Nickels, J., dissenting). "In Illinois, an 'employer's immunity from a suit in tort by its employee as plaintiff is not a bar to a claim for contribution against it by a defendant held liable to such a plaintiff.' " *Palmer v. Freightliner, LLC*, 383 Ill. App. 3d 57, 61 (2008) (quoting *Doyle v. Rhodes*, 101 Ill. 2d 1, 14 (1984)). Any amount that plaintiff recovers from the assigned contribution claims would not be for plaintiff's personal injuries, and plaintiff freely admits that there is "no question" that it must first reimburse the workers' compensation lien from the settlement proceeds. Here, the contribution claims do not constitute a double recovery; they merely ensure the equitable apportionment of damages, fulfilling a purpose of the Contribution Act. See *Babb*, 162 Ill. 2d at 171. We must therefore reject Summit's argument on this point.

¶ 35    In addition, Summit's reliance upon *Wilson v. Hoffman Group, Inc.*, 131 Ill. 2d 308 (1989), is unavailing. In that case, the injured plaintiff-employee sued a third-party tortfeasor (the general contractor) and later settled with his employer for $24,000 and the employer's waiver of its workers' compensation lien. *Id.* at 311. Before the supreme court, the general contractor argued that it should be entitled to a setoff of the amount of the workers' compensation lien. *Id.* at 319-20. The court agreed, holding that, if the general contractor (the third-party tortfeasor) was not

allowed a setoff, the plaintiff would receive a double recovery for his workplace injuries: one consisting of the workers' compensation benefits (that the plaintiff would not have to repay following the employer's waiver of the lien), and another from the judgment against the general contractor. *Id.* at 322. Here, plaintiff did not settle with his employer, Summit, and as noted above, plaintiff concedes that any amount received from the settlement proceeds will first have to pay down the workers' compensation lien. *Wilson* is thus unavailing, and the circuit court correctly denied Summit's motion.

¶ 36                           *The Circuit Court's Good-Faith Finding*

¶ 37    Summit next contends that the circuit court erroneously found that the settlement agreement was entered into in good faith. Summit's contention mirrors the arguments made above: It argues that the settlement cannot satisfy the good faith requirements of the Contribution Act because it either "conflicts with the terms of the Contribution Act" or "is not consistent with the policies" underlying it.

¶ 38    Whether a settlement was made in good faith is a matter left for the circuit court's determination "after consideration of all of the surrounding circumstances." *Dubina v. Mesirow Realty Development, Inc.*, 197 Ill. 2d 185, 191-92 (2001). "This totality-of-the-circumstances approach allows trial courts to give effect to the strong public policy favoring the peaceful settlement of claims, and at the same time allows trial courts to be on guard for any evidence of unfair dealing, collusion, or wrongful conduct by the settling parties." *Id.* at 191. A settlement agreement that conflicts with the terms of the Contribution Act or is not consistent with the policies underlying it cannot satisfy the good-faith requirement of the Contribution Act. *Id.* at 192. The settling parties carry the initial burden of making a preliminary showing of good faith, which at a minimum requires "the existence of a legally valid settlement agreement." *Johnson v. United*

*Airlines*, 203 Ill. 2d 121, 132 (2003). Once the settling parties have made a preliminary showing of good faith, the burden shifts to the party challenging the good faith of the settlement to show by a preponderance of the evidence the absence of good faith. *Id.* We review a court's determination as to the good faith of a settlement for an abuse of discretion. *Id.* A court abuses its discretion only where its ruling is "arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view." *TruServ Corp. v. Ernst & Young, LLP*, 376 Ill. App. 3d 218, 227 (2007).

¶ 39    In this case, Summit's contention fails for the same reasons as above. The settlement agreement here (which assigned the contribution claims against Summit to plaintiff) capped Summit's maximum contribution exposure that it would have to pay to plaintiff as the assignee rather than the settling defendants. As we held above, this is not a double recovery because the contribution claim is separate from a personal injury action (or here, plaintiff's workers' compensation coverage). See *Claudy*, 169 Ill. 2d at 47 (Nickels, J., dissenting); see also *Palmer*, 383 Ill. App. 3d at 61 (quoting *Doyle*, 101 Ill. 2d at 14). In addition, Wal-Mart (0% responsible, per the jury verdict), Nuline (0%), and ICI (7.5%) paid $2.6 million, $950,000, and $1.6 million, respectively, while Summit paid nothing toward the settlement despite the jury's finding of 92.5% responsibility. The settling defendants thus clearly paid far in excess of their *pro rata* shares of the common liability. Summit has offered no other argument that the settlement agreement was the product of unfair dealing, collusion, or wrongful conduct by the settling parties. *Dubina*, 197 Ill. 2d at 191. Accordingly, the circuit court's good-faith finding was not arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view. *TruServ,* 376 Ill. App. 3d at 227. Therefore, the court did not abuse its discretion.

¶ 40    Moreover, Summit's reliance upon *Dubina* does not change our decision. In *Dubina*, the agreement provided that, in addition to $4.5 million that was "allocated as payment toward the

settlement, \*\*\* another $4.5 million was allocated as payment for the assignments, so that [the nonsettling defendant] would be entitled to a setoff of only $4.5 million, even though the settling defendants had paid, and plaintiffs had received, consideration totaling $9 million." *Dubina*, 197 Ill. 2d at 195. This had the effect of depriving the nonsettling defendant of its statutory right to a setoff of the full payments of $9 million. *Id.* Here, by contrast, there was no separate payment for the assigned contribution claims. Summit's claim of error is thus without merit.

¶ 41                    *Whether the Assigned Claim Against Nuline is Time Barred*

¶ 42    Summit further contends that the circuit court erred in allowing plaintiff to file a third amended complaint that added Nuline's contribution claim against Summit, which Summit argues is time barred. Plaintiff sought to add that claim following our decision in *Barnai II*. Summit argues that plaintiff voluntarily dismissed Nuline's contribution claim prior to the first trial and our decision in *Barnai II*, and the circuit court dismissed it with prejudice based upon its agreement that Nuline was "forever barred" from renewing the claim. As such Summit argues that the claim was filed beyond the statute of limitations. Summit further asserts that Nuline "abandoned" the claim because, following the dismissal of the claim, plaintiff failed to include Nuline's contribution claim in either the amended or second amended complaints.

¶ 43    After a judgment is reversed and the cause is remanded to the circuit court, that court can hold "only such further proceedings as conform to the judgment of the appellate tribunal." *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 352-53 (2002). A reviewing court, however, need not provide specific directions in remanding a cause. *Id.* at 353. If a cause is remanded with directions that are not specified, the court to which the cause is remanded must examine the reviewing court's opinion and proceed in conformity with the views expressed in it. *Id.* We must

reverse any orders by the circuit court that it entered following remand that do not conform to our mandate. *Id.* at 355.

¶ 44 In *Barnai II*, this court held that Summit was prejudiced by Nuline's absence from the verdict form, and that the jury's verdict "therefore cannot stand." *Barnai*, 2017 IL App (1st) 171940, ¶ 20. We thus reversed the circuit court's order denying Summit's posttrial motion for new trial, vacated the circuit court's orders entering judgment on the jury's verdict and converting the judgment to a monetary amount, and remanded for a new trial. *Id.* Our mandate read, "Reversed in part, vacated in part, and remanded with instructions." *Id.* ¶ 27. Our "instructions" (*i.e.*, directions) were not specific, so the circuit court had a duty to review our opinion to proceed in conformity with our views. See *Clemons*, 202 Ill. 2d at 353. The gist of our holding was that a new trial was warranted because the verdict form did not include a fault allocation for Nuline but required the jury's fault allocations for the other parties to add to 100%. Clearly, in order to conform to our opinion in *Barnai II*, the new trial would require that the jury verdict form include a fault allocation for Nuline. It did not, however, require a revival of Nuline's contribution claim. Instead, the jury could have assessed the apportionment of fault based upon the evidence and arguments related to the contribution claims that were not time-barred. Since the court erroneously construed our mandate, we must reverse its judgment granting plaintiff's motion for leave to file a third amended complaint. *Id.* at 355. Therefore, we modify the circuit court's order that converted the jury's fault allocation against Summit on Nuline's assigned contribution claim into a monetary judgment, reducing the judgment by $950,000, from $4,692,953.93 to $3,742,953.93.

¶ 45 Moreover, we note that Nuline was served with the complaint on October 29, 2018,[5] filed its appearance on June 4, 2019, and filed its answer on July 30, 2009. Using even the latest of

---

[5] The handwritten date on the summons was October 28, 2018, which was a Sunday.

these three dates, the statute of limitations would have expired on July 30, 2011 (see 735 ILCS 5/13-204(b) (West 2018) (contribution actions must be commenced within two years of service)). This was well before August 29, 2018, the date when plaintiff sought to refile the assigned contribution claim from Nuline. Therefore, on this additional ground the court erred in allowing plaintiff to revive Nuline's contribution claim against Summit after dismissing that claim with prejudice.

¶ 46                    *Whether Summit is Entitled to a Set-Off*

¶ 47    Summit's fourth contention of error is that the circuit court erred in denying Summit's request for a setoff. Summit contends that it is entitled to a setoff of $715,453.93 for amounts its insurer paid on behalf of Wal-Mart and ICI toward the settlement. Although in *Barnai II* we reversed the court's order denying plaintiff's motion for a new trial and remanded the cause for a new trial (*Barnai*, 2017 IL App (1st) 171940, ¶ 26), plaintiff notes that we also held that this issue was forfeited (see *id.* ¶ 24), and concludes that the law of the case doctrine applies, barring consideration of this issue in this appeal.

¶ 48    The law of the case doctrine provides that rulings on points of law made by a reviewing court are binding in that case both on the trial court and on subsequent appeals to that same reviewing court unless a higher court has changed the law. *Emerson Electric Co. v. Aetna Casualty and Surety Co.*, 352 Ill. App. 3d 399, 417 (2004). Therefore, the determination of a question of law by an appellate court on the first appeal is generally binding upon it on the second appeal. *Krautsack v. Anderson*, 223 Ill. 2d 541, 552 (2006). A reviewing court may, however, revisit an issue " 'where facts have changed or where we determine that our initial decision was clearly erroneous and would work a manifest injustice.' " *Bond Drug Co. of Illinois v. Amoco Oil Co.*, 323 Ill. App. 3d 190, 198 (2001) (quoting *Harris Trust & Savings Bank v. Otis Elevator Co.*, 297

Ill. App. 3d 383, 388 (1998)). Whether the law-of-the-case doctrine applies presents a question of law that we review *de novo*. *In re Christopher K.*, 217 Ill. 2d 348, 363-64 (2005).

¶ 49    At the outset, we reject Summit's argument that our statements regarding the setoff in *Barnai II* were mere dicta. In that case, we considered the setoff issue that Summit had raised but held that Summit's failure to raise it in a posttrial motion resulted in its forfeiture. That is not *dicta*; that is a holding. Moreover, even if it were *dicta*, it would still be controlling. *Dicta* typically consists of two types: *obiter dicta* and judicial *dicta*. Both *obiter dicta* and judicial *dicta* are comments in a judicial opinion that are unnecessary to the disposition of the case, but judicial *dicta* involve an issue briefed and argued by the parties and thus "have the force of a determination by a reviewing court and should receive dispositive weight in an inferior court." *People v. Williams*, 204 Ill. 2d 191, 206 (2003) (citing Black's Law Dictionary 465, 1100 (7th ed. 1999)). Here, as noted above, the setoff issue was briefed and argued before this court in *Barnai II*. Accordingly, even if it were considered *dicta*, it is judicial *dicta*, which is tantamount to a determination by this court.

¶ 50    Nonetheless, we agree with Summit that the law of the case doctrine is inapplicable. Our holding that the issue was forfeited was solely for the purposes of the first appeal based upon Summit's failure to raise the issue in its post-trial motion following the first trial. We are now considering the same issue after it was properly and timely raised in a post-trial motion following an entirely new trial. Accordingly, the law of the case doctrine does not bar this court from considering the claim.

¶ 51    When, as in this case, the setoff is "in the nature of an enforcement action," section 2(c) of the Contribution Act controls. *Thornton v. Garcini*, 237 Ill. 2d 100, 116 (2010). Section 2(c) is intended to prevent double recovery and also ensures that nonsettling parties will not pay more

than their *pro rata* shares of the common liability. *Id.* Generally, the nonsettling party seeking a setoff bears the burden of proving what portion of a prior settlement was allocated or attributable to its share of the liability. *Id.* The determination of whether a defendant is entitled to a setoff is a question of law and, therefore, subject to *de novo* review. *Id.* at 115-16.

¶ 52    *Mondschein v. Power Construction Co.*, 404 Ill. App. 3d 601, 602-03 (2010) provides guidance. In that case, the plaintiff (an injured worker at a construction site) sued Power Contracting and Engineering Corporation (Power) (the general contractor) and others for negligence. *Id.* at 602-03. Power filed a third-party complaint for contribution against the plaintiff's employer, Joliet Steel and Construction, Inc. (Joliet Steel) (a subcontractor on the project). *Id.* at 603. Joliet Steel in its subcontract promised to indemnify Power for any claims arising out of Joliet Steel's work and to obtain a CGL policy with a $1 million per occurrence limit that named Power as an additional insured. *Id.* The plaintiff settled the underlying action against Power for $2.673 million, which was funded in part by a payment of $1 million under Joliet Steel's insurance policy, and an assignment of Power's third-party claim for contribution against Joliet Steel. *Id.* at 605. The plaintiff, as assignee of Power, then filed an amended complaint against Joliet Steel for contribution under the Contribution Act. *Id.* In response, Joliet Steel raised an affirmative defense claiming it was entitled to an offset of the $1 million dollar insurance payment. Following a trial on the contribution claim, a jury assessed Joliet Steel's liability at 35%. *Id.* The circuit court entered judgment against Joliet Steel for $935,550, or 35% of the common liability of $2,673,000, after finding that Joliet Steel did not have a right to a setoff. *Id.*

¶ 53    On appeal, Joliet Steel argued that the circuit court erred in denying its affirmative defense seeking an offset. Joliet Steel maintained that its *pro rata* share of the common liability ($935,550)

had been fully satisfied through the $1 million insurance policy it agreed to purchase on Power's behalf. *Id.*

¶ 54     This court began its analysis by examining Joliet Steel's contractual obligations to indemnify Power and name Power as an additional insured and the language of the insurance policy. *Id.* at 609. Under the additional insured provisions of the CGL policy that Joliet Steel purchased, Power was covered for liability that arose out of Joliet Steel's work and not for its own direct negligence. *Id.* at 609-10. This court distinguished indemnification and contribution and concluded that Power was reimbursed to the extent of its secondary liability and could not seek further recovery for the $1 million indemnification payment. *Id.* However, Power was entitled to seek contribution for its loss in excess of the insurance policy limits, which was $1.673 million. *Id.* at 610. Therefore, the plaintiff, as assignee of Power, could " obtain contribution for that amount that exceeds Power's *pro rata* share of the common liability which, based on the apportionment by the jury would be 35% of the $1,673,000." *Id.*

¶ 55     Here, as in *Mondschein*, Summit was obligated to indemnify Wal-Mart and ICI for "liability arising out of '[Summit's] work' " for them. It is undisputed that the Interstate insurance policy that Summit purchased included Wal-Mart and ICI as additional named insureds and funded $773,463.71 of the total settlement. In addition, the record reveals that Interstate's $773,463.71 in payments allocated $348,058.67 to Wal-Mart and $425,405.04 to ICI. Therefore, as in *Mondschein*, plaintiff may not seek contribution from Summit for those amounts, but may seek contribution against Summit for the amounts paid in excess of the insurance payments. *Id.*

¶ 56     As a result, the original settlement amount allocated to Wal-Mart ($2,598,058.32) must be reduced by $348,058.67 to $2,249,999.65, and the amount originally allocated to ICI ($1,525,405.39) must be reduced by $425,405.04 to $1,100,000.35. Because the jury found Wal-

Mart 0% liable, Summit is liable for the full allocated amount of $2,249,999.65 relating to Wal-Mart. However, Summit's liability to ICI of $1,100,000.35 must be reduced by 7.5% to conform to the jury's allocation, resulting in an amount of $1,017,500.32. Above, we reduced the circuit court's judgment against Summit to $3,742,953.93 to reflect the absence of Nuline's contribution claim. See *supra* ¶44. Based on our set-off analysis, we reduce that amount further from $3,742,953.93 to $3,350,000.00 (the total of $2,249,999.65 plus $1,100,000.35), a difference of $392,953.93.

¶ 57                    *The Exclusion of Barnai's Alleged Judicial Admissions*

¶ 58    Finally, Summit contends that the court erred in excluding plaintiff's alleged judicial admissions.    Specifically, Summit argues that plaintiff's allegations in its complaint for contribution that Nuline and ICI settled in reasonable anticipation of liability constituted judicial admissions.

¶ 59    Summit, however, has forfeited this issue. "A motion *in limine* is an interlocutory order and remains subject to reconsideration by the court throughout the trial." *Cetera v. DiFilippo*, 404 Ill. App. 3d 20, 40 (2010) (citing *Krengiel v. Lissner Corp.*, 250 Ill. App. 3d 288, 294 (1993)). The failure to raise an objection forfeits consideration of the issue on appeal. *Id.* Here, following the circuit court's denial of its motion *in limine*, Summit failed to raise the issue at all during trial, only waiting until after trial to raise it in its post-trial motion. Accordingly, it is forfeited.

¶ 60    Moreover, forfeiture aside, Summit's claim is without merit. "Alleged judicial admissions must be considered in their context." *Hall v. Cipolla*, 2018 IL App (4th) 170664, ¶ 122. Read in context, the statements at issue concerned *allegations* made in plaintiff's complaint. In fact, both statements are prefaced with the phrase, "At the time and place alleged in [plaintiff's] complaint." We review the circuit court's ruling on a judicial admission for an abuse of discretion. *Serrano v.*

*Rotman*, 406 Ill. App. 3d 900, 907 (2011). As noted above, a court abuses its discretion only where its ruling is "arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view." *TruServ*, 376 Ill. App. 3d at 227. Since we cannot hold that the court's decision was arbitrary, fanciful, unreasonable, or one that no reasonable person would adopt, the court did not abuse its discretion, and we are compelled to reject Summit's claim.

¶ 61                                  CONCLUSION

¶ 62     We reverse the circuit court's order granting plaintiff's motion for leave to file a third amended complaint, which revived Nuline's contribution claim against Summit, which results in a reduction of the judgment against Summit by $950,000, from $4,692,953.93 to $3,742,953.93. We further reverse that portion of the court's May 31, 2019, order denying Summit's request for a setoff, resulting in an additional reduction of the judgment against Summit by $392,953.93, resulting in a final judgment amount of $3,350,000. We otherwise affirm the judgment of the circuit court.

¶ 63     Affirmed in part as modified and reversed in part.

**No. 1-19-1306**

| | |
|---|---|
| **Cite as:** | *Frank Barnai v. Wal-Mart Stores, Inc.*, 2020 IL App (1st) 191306 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No.17 L 7543; the Hon. James N. O'Hara and Janet A. Brosnahan, Judges, presiding. |
| **Attorney for Appellant:** | John J. Piegore, Brian H. Sanchez, and Edric S. Bautista, of Sanchez Daniels & Hoffman, LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Martin Healy, Jr. and Kevin T. Veugeler, of Healy Scanlon, and Joan M. Mannix, of Joan M. Mannix, Ltd., both of Chicago, for appellee. |